Filed 8/15/14  P. v. McGuire CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DENNIS McGUIRE,<br><br>    Defendant and Appellant. | A136002<br>A137702<br><br>(San Francisco County<br>  Super. Ct. Nos. 216405, 217293) |

Defendant Dennis McGuire appeals from judgments of conviction entered after he pleaded guilty to grand theft (Pen. Code, § 487, subd. (a)[1]) and second degree burglary (§ 459) in two cases. The charges related to incidents concerning the alleged theft and attempted theft of copper wire from two victims. With the assistance of counsel, defendant entered into plea agreements with the prosecution to resolve the charges in both cases. The court promised to place defendant on probation for three years, with several court-ordered conditions including payment of victim restitution for the replacement and repair of the copper wire. At sentencing, the court directed defendant to pay $13,208.23 to "City and County of San Francisco, Municipal Railway" and $6,989 to "U-Haul." Defendant paid the court-ordered victim restitution, and then sought to withdraw his guilty pleas on the grounds that he was not sufficiently apprised of the aggregate amount of victim restitution at the time he entered his pleas, and, in all events, he was deprived of a hearing to challenge the amount of victim restitution. The court denied defendant's motion to withdraw his guilty pleas, but ruled that defendant could

---

[1]     All further unspecified statutory references are to the Penal Code.

1

challenge the amount of victim restitution. After an evidentiary hearing, the court confirmed defendant was required to pay the amount of victim restitution previously ordered in both cases.

On appeal, defendant challenges the trial court's denial of his motion to withdraw his guilty pleas and the awards of victim restitution. We conclude defendant's arguments are without merit, and accordingly, we affirm.

## FACTS[2]

### A. Background

### 1. *Municipal Railway Case*

In August 2011, defendant and two accomplices stole over 400 feet (about the length of a city block) of copper wire owned by the City and County of San Francisco (hereafter also referred to as the city). The copper wire was kept in an underground structure, and used to power the overhead cables supplying electricity to municipal railway buses. At the preliminary hearing, San Francisco Police Officer Alvaro Schor testified that Patrick Cantwell, the coordinator for the city's municipal railway underground lines, provided an initial estimate of "at least $10,000" for replacing the copper wire, including labor costs. After the defendant was held to answer, an information was filed charging him with the felony offenses of grand theft of personal property (copper wire exceeding $950 belonging to "City and County of San Francisco") (§ 487, subd. (a)), receiving or buying stolen property belonging to "City and County of San Francisco" (§ 496, subd. (a)), vandalism of copper wire belonging to "City and County of San Francisco" causing damages of more than $400 (§ 594, subd. (b)(1)), and second degree burglary of a commercial building (underground utility service area occupied by "City and County of San Francisco") (§ 459).

---

[2]    We set forth only those facts that are necessary to resolve the issues defendant raises on these appeals. Because defendant pleaded guilty, the facts regarding the incidents giving rise to the charges filed against him are taken from the testimony presented at the preliminary hearings and the magistrate's findings made after those hearings.

### 2. *U-Haul Case*

In January 2012, while defendant was out of custody on bail in the Municipal Railway case, he and two other accomplices attempted to steal copper wire from the roof of a storage unit at a U-Haul personal storage facility in San Francisco. The copper wire (one piece about 100 feet and a second piece about 30 to 40 feet) was "ground" wire used for cell site equipment owned by Verizon. Verizon paid a monthly lease fee to use the U-Haul facility. The police apprehended defendant and his accomplices after seeing them drag the copper wire to their car and then reenter the U-Haul facility. At the preliminary hearing, San Francisco Police Officer Bayardo Roman testified that a technician employed by Much Less Electric opined that it would cost "$8700" to repair and replace "conduit pipe and wiring," and "we're entitled to replace the whole 100 feet of wiring that was cut from that location." The technician's estimate took into consideration that approximately 30 feet of the 100-foot copper wire could be salvaged. The estimate did not include costs associated with the loss of the smaller copper wire, which had been booked into evidence by the police. After defendant was held to answer, an information was filed charging him with the misdemeanor offense of possession of burglar tools (§ 466) and the felony offenses of second degree burglary (commercial building occupied by "U-Haul") (§ 459) and vandalism (damages of more than $400 – copper wire housing and pavement conduits belonging to "U-Haul") (§ 594, subd. (b)(1)).

### B. Change of Plea and Sentencing Proceedings

Separate change of plea hearings were held at which defendant pleaded guilty to grand theft in the Municipal Railway case and second degree burglary in the U-Haul case. In reciting the terms of the plea agreements in open court, defense counsel stated defendant would pay restitution "to the victims" in each case "as determined by the Adult Probation Department."[3]

---

[3] Before the change of plea proceedings, the adult probation department filed a report considering only the theft of the copper wire in the Municipal Railway case. In describing the incident, the probation department officer noted that the stolen wire was "valued at approximately $10,000." There was no description of the incident related to

At sentencing encompassing both cases, and as agreed, the court suspended execution of an aggregate term of five years in state prison and imposed probationary terms of three years. The district attorney also proffered two CR-110 form orders setting forth requested victim restitution sought in each case - $13,208.23 to "City and County of San Francisco, Municipal Railway," and $6,989 to "U-Haul."[4] Each order indicated the amount of restitution "includes . . . value of property stolen or damaged." Defendant asked the court for an opportunity to dispute the aggregate amount of victim restitution having received the restitution orders just shortly before sentencing. The prosecutor acknowledged defendant's right to a restitution hearing, but noted the restitution orders were filed with "receipts show[ing] one of the losses was municipal county property [and] the other was copper wire from a Verizon location at U-Haul."[5]

## C.     Post-Judgment Proceedings

Instead of immediately seeking a restitution hearing, defendant paid the court-ordered victim restitution and then filed a motion, later amended, to withdraw his guilty

_____

the attempted theft of copper wire in the U-Haul case. The probation department officer stated that on the matter of victim restitution, "the amount of restitution cannot be fixed because necessary information is lacking or a subsequent hearing is needed to resolve a dispute about the amount." In the "recommendation" portion of the report, the probation department officer recommended that defendant "[p]ay restitution to the victim in the amount of $ TBD or in an amount and manner to be determined by the Court plus a 15% administrative fee."

[4]     At the sentencing hearing when the court stated restitution was to be paid to "Linco Electric," the prosecutor indicated Linco Electric was related to the loss at the U-Haul facility, and the court's signed order of restitution directed defendant to make restitution to "U-Haul."

[5]     The CR-110 form ordering restitution of $13,208.23 to "City & County of SF, Municipal Railway," had attached a May 4, 2012, statement from the city for "[w]ire replacement [r]epair of wire . . . reported stolen on 8/24/11." The copper wire replacement and repair costs included $4,530.96 for material and supplies plus sales taxes; $4,458.29 for overhead costs; $3,218.98 for direct labor and fringe benefits, and $1,000 for the use of equipment for 20 hours. The CR-110 form ordering restitution of $6,989.00 to "U-Haul" had no attached receipt concerning the amount requested by U-Haul.

4

pleas. [6] In support of his motion to withdraw, defendant argued he "suffered harsher sentences than what was called for by the global plea bargain because the restitution amounts that have been imposed upon [him] pursuant to his plea bargain are without merit." Defendant asserted, in pertinent part, that (1) the city's cost estimate attached to the CR-110 form order failed to account for the value of recovered copper wire; (2) there was no supporting document attached to CR-110 form order justifying the amount of restitution awarded to U-Haul, and (3) there was no victim that needed to be made whole in the U-Haul case. The prosecutor urged the court to deny defendant's motion to withdraw, arguing that defendant had failed to demonstrate any basis to support his expectation that the restitution orders would be less than what was actually imposed by the court, and defendant had been advised at sentencing of his right to contest the accuracy of the restitution awards but he failed to do so.

After a hearing on December 10, 2012, the trial court denied defendant's motion to withdraw his guilty pleas, but ruled that defendant could challenge the actual sums to be paid as victim restitution.

### D.     Victim Restitution Proceeding

On April 12, 2013, defendant filed separate motions challenging the victim restitution awarded in both cases. As to the restitution awarded in the Municipal Railway case, defendant argued that "the value of the stolen and recovered copper wire – which was not damaged – was significant," and he was entitled to offset the city's replacement and repair costs by the amount of proceeds earned when the city sold the salvaged copper wire. As to the restitution awarded in the U-Haul case, defendant argued U-Haul had not suffered an economic loss and/or property damage as a result of defendant's criminal

---

[6]     Pursuant to the change of plea agreements, defendant also asked the court to vacate the execution-suspended aggregate sentence of five years in state prison and impose an execution-suspended aggregate sentence of three years in state prison on the ground he had paid court-ordered victim restitution in full. The court granted defendant's request and resentenced him by suspending execution of an aggregate term of three years in state prison and reimposed the probationary terms of three years. Defendant's probation terms were later revoked and he was resentenced to an aggregate term of three years in county jail.

conduct because (1) the copper wire belonged to Verizon, and (2) U-Haul merely received a monthly lease fee from Verizon for its use of the U-Haul facility.

At a hearing held on July 15, 2013, the prosecutor presented no witnesses or documentary evidence beyond the CR-110 form orders. The defense case began by counsel informing the court "by way of background" that at issue was defendant's challenge to (1) "a CR-110 form . . . filed on June 20th, 2012, ordering restitution to the victim U-Haul in the amount of $6989" and (2) "a CR-110 [form] . . . filed on June 20th, 2012, ordering restitution payable to the victim San Francisco Municipal Railway in the amount of $13,208.23."

### 1.    *Municipal Railway Case*

The defense called two witnesses, Timothy Lipps, a superintendent in the city's Municipal Railway Overhead Line Department, and Alex Shimada, the operations manager at the San Francisco facility of Sims Metal Management (SMM).

Lipps testified that, at the request of the district attorney's office, he prepared a job cost form, estimating a total loss of $13,208.23, for the replacement of the underground copper wire that was stolen on August 24, 2011. The estimate included $4,176 for the cost of replacing 450 feet of copper wire that was cut from the municipal railway's underground lines. All of the copper wire was required to be replaced as a safety measure. In preparing the cost estimate, Lipps did not include "any credit for any profit that was garnered from selling the cut damaged copper wire."

Lipps believed that the day after the August 24, 2011, incident, the damaged copper wire was placed in a scrap metal bin at a municipal railway facility on Bryant Street. When asked if he was aware of any other sizeable copper wire discards by municipal railway facilities between August 24, 2011 and April 24, 2012, Lipps replied, "There could have been. It's not unusual," but he did not recall any specifically at the time of the hearing. The city contracted with a private scrap metal company to retrieve scrap metal from bins at municipal railway facilities. Lipps believed the name of the scrap metal company was Cirscosta, but he was not actually sure because "[w]e just changed." The private scrap metal company did not come at a set time but only when

6

called by someone from a municipal railway facility. Lipps believed he might have given defense counsel records concerning when he (Lipps) called the private scrap metal company in late August or September of 2011.

Shimada testified SMM had a contract with San Francisco, during the period from August 2011 through April 2012, to recycle scrap metal from different municipal departments when facility staff called for a pick up. The scrap metal was weighed when it got to SMM's facility. Shimada knew of only two sizeable pickups of copper wire at a municipal railway facility in the time period following August 24, 2011, "one was in October and the other was in April." Between August 24, 2011 to September 26, 2011, there was no pickup of copper from a municipal railway facility. Shimada identified a "purchase ticket" dated September 26, 2011, which showed that on that date there was a pickup from the municipal railway facility at Bryant Street that included copper wire weighing 290 pounds. The city was reimbursed the sum of $1,006.88 for that copper wire. However, as to the bin that was picked up on September 26, 2011, Shimada did not know the bin size, how many days it took to fill the bin, how many different municipal railway projects could have contributed to the scrap copper wire in the bin, or whether "the scrap copper that defense [counsel] had been asking about" was even included in the bin.

### 2.    *U-Haul Case*

The defense called one witness, Joe Krueger, president of the U-Haul Company of California. Krueger testified he was at the U-Haul facility on January 4, 2012, after defendant attempted to steal copper wire from that facility. Krueger did not recall if there was any specific damage to any U-Haul property other than "a cable damaged[,] . . . [¶] . . . the one [defendant] cut." When asked if the cut copper wire was the property of U-Haul, Krueger replied, "it's part of a Verizon cell tower, and it's all part of a lease, and I can't speak on how the lease terms are written." Krueger did not know if the cut copper wire had been installed by U-Haul or by Verizon, but it was possible Verizon installed it. After the incident, Krueger called an electrician to estimate the cost of fixing the cut copper wire. Krueger did not personally call the electrician to repair the cut copper wire

7

but someone from Krueger's office or U-Haul may have done so. Krueger did not know if any U-Haul employee had requisitioned any repair or replacement of the cut copper wire. When asked if U-Haul had repaired or replaced the cut copper wire, Krueger stated, "The cable is repaired," but he did not know who repaired the cut copper wire or paid for the repair. Krueger also did not know if anyone from U-Haul had submitted a claim to the district attorney's office for the repair of the cut copper wire. On cross-examination, Krueger confirmed the cut copper wire was actually repaired as it was a grounding cable from the cell tower to the earth and its repair was a safety issue. On redirect, Krueger conceded he did not know if the cut copper wire was actually used by Verizon because he could not speak to the technical specifications of the cell tower's operation. In response to the court's questions as to whether in the course of business documents concerning the repair would have crossed his desk, Krueger replied, "The lease is done through America Real Estate, which is out of our corporate office. They are the ones that actually own the building. [¶] So it's entirely possible that Verizon said to America Real Estate, can you get this taken care of, and America Real Estate would have called out someone to get it fixed and paid for it, since we are the landlord of it. So it's possible that it could have been fixed and paid for by America Real Estate or U-Haul, and I would never see it."

After the evidentiary hearing, the parties submitted written memorandum in lieu of closing arguments, as requested by the court. Defendant's post-hearing memorandum addressed both restitution orders. In the Municipal Railway case, defendant asked the court to exercise its discretion and reduce restitution by at least $1,006.88, representing the sum reimbursed to the city for the copper wire picked up by SMM at the Bryant Street municipal railway facility on September 26, 2011. According to defendant, the city's recoupment of "substantial funds" for the discarded copper wire constituted " 'compelling and extraordinary' circumstances" allowing for a deviation from a strict calculation of the replacement cost incurred by the city. In the U-Haul case, defendant asked the court to vacate the order of restitution because it "was erroneous insofar as it names U-Haul as the victim . . entitled to restitution." Defendant asked the court to

8

"retain jurisdiction" in the event that an actual victim came forward and requested restitution in the U-Haul case.

The prosecutor opposed defendant's request to modify or vacate the orders of restitution. In the Municipal Railway case, the prosecutor argued defendant was not entitled to an offset for the scrap value of the recovered copper wire, and assuming defendant was entitled to such an offset, he had failed to establish the value of the recovered copper wire at the July 15 hearing. In the U-Haul case, the prosecutor argued that at the July 15 hearing defendant failed to present any evidence that the cost of repairing the damaged copper wire was less than the amount awarded by the court.

On August 20, 2013, the trial court, after reviewing its notes from the July 15 hearing and the parties' written memoranda, denied defendant's requests and confirmed the victim restitution orders without further comment.

## DISCUSSION

### I. Defendant's Motion to Withdraw His Guilty Pleas

Defendant challenges the denial of his motion to withdraw his guilty pleas, arguing that the trial court imposed restitution orders significantly in excess of the amounts contemplated by the plea agreements. We disagree. The plea agreements stated defendant was to pay victim restitution and no promise was made as to the amount of victim restitution. Additionally, the evidence admitted at the preliminary hearings and the charges in the informations put defendant on notice that he might have to pay victim restitution to the "City and County of San Francisco" and "U-Haul" (named victims in the informations) and the victims had initially estimated their losses were "at the least $10,000" and "$8,700," respectively. Unlike the situations in *People v. Walker* (1991) 54 Cal.3d 1013, 1026, and *People v. Brown* (2007) 147 Cal.App.4th 1213, 1218-1219, cited by defendant, the trial court here could reasonably find the aggregate principal sum of $20,197.23, ordered to be paid as victim restitution, was not significantly different from the victims' initial estimated losses. Defendant cites nothing in the record supporting his argument that at the time of the plea agreements he contemplated that victim restitution would be significantly less than the actual awards because he would receive credit for the

9

value of any salvaged copper wire in the Municipal Railway case and there was no victim in the U-Haul case. Consequently, we reject defendant's contention that he is entitled to withdraw his guilty pleas and obtain a refund of the paid victim restitution.

## II. Victim Restitution Awards

Defendant presents substantive arguments challenging the victim restitution orders, none of which requires reversal.

In this case we are concerned with the imposition of victim restitution as a condition of probation pursuant to section 1203.1 That section permits trial courts to "impose upon probationers 'reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer . . . .' (§ 1203.1, subd. (j).)" (*People v. Anderson* (2010) 50 Cal.4th 19, 26 (*Anderson*).) As explained by our Supreme Court in *People v. Giordano* (2007) 42 Cal.4th 644: "While we review all restitution orders for abuse of discretion, we note that the scope of a trial court's discretion is broader when restitution is imposed as a condition of probation. . . . '[A] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." ' ([*People v.*] *Lent* [(1975)] 15 Cal.3d [481,] 486.) With respect to the third criterion, 'an order of restitution, i.e., attempting to make a victim whole, has generally been deemed a deterrent to future criminality [citation], and the court is not limited to the transactions or amount of which defendant is actually convicted [citations].' (*Ibid*.) Probationary restitution may be imposed even if a defendant has not been convicted for a particular offense 'because probation is an " ' "act of clemency and grace," ' " not a matter of right. [Citation.] "[T]he granting of probation is not a right but a privilege, and if the defendant feels that the terms of probation are harsher than the sentence for the substantive offense[,] he is free to refuse probation." [Citations]. Because a defendant has no right to probation, the trial court can impose probation

10

conditions that it could not otherwise impose, so long as the conditions are not invalid under the three *Lent* criteria.' " (*Giordano, supra*, at p. 663, fn. 7.)

## A. *Municipal Railway Case*

In challenging the victim restitution awarded in the Municipal Railway case, defendant argues the trial court abused its discretion in failing to give him credit for the salvage value of the recovered wire that was required to be replaced as a consequence of his criminal conduct. We disagree. Relying on isolated portions of the testimony of Lipps and Shimada, defendant argues the trial court should have found that the stolen wire was placed in the scrap bin at the Bryant Street municipal railway facility in late August 2011 and that it was the only copper wire in the bin that was later picked up on September 26, 2011 and for which the city received $1,006.88. However, neither Lipps nor Shimada testified that the bin contained only the copper wire stolen by defendant and that the payment to the city was only for copper wire stolen by defendant. Thus, the trial court could reasonably find that any offset for the value of the salvaged stolen copper wire would be entirely speculative. Consequently, we reject defendant's argument that trial court abused its discretion in confirming the victim restitution awarded in the Municipal Railway case.

## B. *U-Haul Case*

In challenging the victim restitution awarded in the U-Haul case, defendant argues the evidence at the evidentiary hearing was insufficient to show that U-Haul had incurred any economic loss or needed reimbursement as a result of defendant's criminal conduct. We disagree. Joe Krueger testified that U-Haul had secured an estimate for the repair of the copper wire damaged by defendant and the copper wire was required to be and actually was repaired. Together with Krueger's additional testimony concerning the relationship between Verizon and America Real Estate (the entity "out of U-Haul's corporate office," which actually owned the property on which the U-Haul facility was located), the trial court could reasonably infer that U-Haul, pursuant to its duties as a landlord, had assumed financial responsibility for the repair and thereby suffered an

11

actual, compensable loss.[7] Defendant's reliance on other portions of Krueger's testimony to support a contrary finding is not persuasive. As the trier of fact, the trial court was free to accept those portions of Krueger's testimony and draw any reasonable inferences therefrom, to support its ruling, while rejecting other portions of the witness's testimony even though the latter testimony may have contradicted the portions accepted by the court. (*Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 67.) Despite defendant's argument to the contrary, we see nothing in *People v. Jones* (2010) 187 Cal.App.4th 418, 424-425, that requires a different result.

Defendant's challenge to the amount of restitution awarded to U-Haul is not properly before us. In support of his motion to withdraw his guilty pleas, defendant argued the CR-110 form order awarding restitution of $6,989 to U-Haul failed to include any documentation justifying the amount. However, at no time during the restitution proceeding did defendant raise an objection to the amount of restitution awarded to U-Haul. "[B]y his failure to object, defendant "forfeited any claim that the order was merely unwarranted by the evidence . . . ." (*People v. Brasure* (2008) 42 Cal.4th 1037, 1075 (*Brasure*); see *Anderson, supra,* 50 Cal.4th at p. 26, fn. 6 ["[d]efendant has waived a claim of error as to the amount of restitution by failing to object on that ground in the trial court"].) We reject defendant's argument that his objection to awarding any restitution to U-Haul was sufficiently broad enough to encompass a challenge to the value placed on the repair of the cut copper wire. If defendant had objected to the amount of restitution, the prosecutor could have presented evidence addressing the issue. "The appropriate amount of restitution is precisely the sort of factual determination that can and should be brought to the trial court's attention if the defendant believes the award is excessive." (*People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218.) Because the U-

---

[7] " 'California law requires landowners to maintain land in their possession and control in a reasonably safe condition. [Citations.] In the case of a landlord, this general duty of maintenance, which is owed to tenants and patrons, has been held to include the duty to take reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures.' " (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1146.)

Haul order of restitution in the sum of $6,989 was "within the sentencing court's statutory authority," and defendant never raised an objection to the actual amount at any time during the restitution proceeding, "we do not decide whether the court" erred in confirming the amount awarded as restitution to U-Haul. (*Brasure, supra*, at p. 1075; see *Anderson, supra*, at p. 26, fn. 6.)

## DISPOSITION

The judgments of convictions, orders denying defendant's motion to withdraw his guilty pleas, orders of victim restitution, and orders denying defendant's motion to modify or vacate the orders of victim restitution, are affirmed.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.