[No. S170778. July 22, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
ELI JORDAN ANDERSON, Defendant and Appellant.

**COUNSEL**

Stephen M. Hinkle, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Jeffrey J. Koch, Ivy B. Fitzpatrick, James D. Dutton, Melissa Mandel and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CORRIGAN, J.**—Defendant was convicted of leaving the scene of an accident resulting in death,[1] and was placed on felony probation pursuant to Penal Code section 1203.1.[2] As a condition of probation, the court ordered defendant to pay restitution for the victim's final hospital expenses. After the prosecutor represented that the deceased had no "financial ability" to pay those expenses, the court ordered that restitution be paid directly to the hospital. The sole issue before us is whether the order of direct payment to the hospital was statutorily unauthorized under section 1203.1. Defendant argues that section 1203.1 expressly requires trial courts to apply the definitions of "victim" contained in section 1202.4, the statute implementing the constitutional right to restitution. Defendant asserts the hospital was not a victim as defined in section 1202.4.

Defendant is incorrect that the "victim" definitions of section 1202.4 are incorporated into section 1203.1. Under the particular and narrow circumstances of this case, the trial court did not abuse its discretion under section 1203.1 by ordering that restitution be paid directly to the hospital.

---

[1] Vehicle Code section 20001, subdivisions (a) and (b)(2).

[2] Further statutory references are to the Penal Code unless otherwise indicated.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

Shortly after midnight on July 2, 2005, defendant was driving on the five-lane Fletcher Parkway in San Diego County. As he briefly took his eyes off the road to change the radio station, he heard a bang and his windshield shattered.

Defendant pulled into a mall parking lot to look at his car, believing someone had thrown a rock at his windshield. Seeing the significant damage to his car and blood at the top of the windshield, he realized he had struck either an animal or a person. Defendant drove slowly through a parking lot bordering the parkway, but did not see what he might have hit. He drove to the freeway and telephoned his girlfriend, who told him to meet her at a restaurant parking lot. He left his car there and they went to the girlfriend's house.

A passing motorist saw 50-year-old Robert Milligan lying across the fifth lane of traffic, trying unsuccessfully to lift himself from the pavement. Help was summoned, but Milligan died at the hospital from massive head and chest injuries.

Defendant's girlfriend and her brother drove back to the scene, spoke to a police officer and learned that a pedestrian had been struck. They then drove to the restaurant parking lot and saw blood on defendant's shattered windshield. When the girlfriend returned home and told defendant what happened, he appeared shocked and wanted to turn himself in. Nonetheless, he did not do so. The next day police learned his identity from anonymous tips.

Evidence indicated that Milligan had been running from the median toward the sidewalk when he was struck. The investigating police officer concluded the "primary collision factor" was the victim's jaywalking.

Defendant's first trial ended in a hung jury. His second trial produced a conviction.[4]

---

[3] Because we have limited review to a narrow legal question, we have largely condensed the factual background from the Court of Appeal's opinion. We accept the Court of Appeal's statement of fact unless a party calls the Court of Appeal's attention to any alleged omission or misstatement in a petition for rehearing. (Cal. Rules of Court, rule 8.500(c)(2).) Although defendant petitioned for rehearing, he did not do so on the basis of any factual omission or misstatement.

[4] Vehicle Code section 20001, subdivision (a) provides: "The driver of a vehicle involved in an accident resulting in injury to a person, other than himself or herself, or in the death of any person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004."

Vehicle Code sections 20003 and 20004 specify the duties of the driver at the scene. Section 20003 provides in relevant part: "(a) The driver of any vehicle involved in an accident

At sentencing, the court noted that it had received and considered a written statement from the victim's mother, Nancy Milligan. The statement included a summary of expenses associated with the victim's death. Mrs. Milligan also addressed the court. She supported a grant of probation, but urged that defendant be ordered to pay the victim's medical expenses. Mrs. Milligan had been "harassed week after week for thousands of dollars in payment of medical bills." At the conclusion of the hearing, the court placed defendant on five years' formal probation and sentenced him to one year in the county jail. Regarding restitution, the trial court stated: "[A]ctual victim restitution is being ordered in favor of the surviving family members of Robert Milligan," in an amount to be set following a formal restitution hearing.

At the restitution hearing, the prosecutor presented receipts for out-of-pocket expenses incurred by Milligan's mother and sister for funeral expenses and related costs. The prosecutor also presented two pages of hospital bills totaling $31,397.55 for Milligan's treatment at Sharp Memorial Hospital. The prosecutor stated, "I understand that the family apparently is not liable for those amounts, but, nonetheless, from the People's perspective, [the hospital], who is going to have to eat those expenses in light of the decedent's lack of financial ability, . . . should be entitled to those, too." Defense counsel acknowledged the trial court's broad discretion to impose conditions of probation, but objected to restitution for medical expenses on the sole basis that the evidence supported the defense theory that Milligan committed suicide.[5] The trial court rejected counsel's argument. After reviewing the family's itemized expenses, the court ordered restitution of $31,397.55 to the hospital and $2,694.47 to the family members.

In the Court of Appeal, defendant argued that restitution to the hospital and family should be stricken. Defendant emphasized that he was not convicted of causing the accident, but only of improperly leaving the scene. He asserted that restitution was improper under the mandatory victim restitution statute, which requires a causal relationship between the criminal conduct and the loss. The gist of his argument was that he should not be ordered to pay

resulting in injury to . . . any person shall also give his or her name, current residence address, . . . the registration number of the vehicle he or she is driving, and the name and current residence address of the owner to the person struck . . . , and shall give the information to any traffic or police officer at the scene of the accident. The driver also shall render to any person injured in the accident reasonable assistance, including transporting, or making arrangements for transporting, any injured person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that treatment is necessary . . . ."

[5] In the first trial, defendant was permitted to present evidence that Milligan may have committed suicide by jumping in front of defendant's car. This evidence was excluded in the second trial.

restitution because Milligan was the cause of his own injuries. Defendant also urged that restitution was improper as an exercise of the court's discretion under section 1203.1.

The Court of Appeal upheld the restitution order under section 1203.1. It relied on *People v. Carbajal* (1995) 10 Cal.4th 1114 [43 Cal.Rptr.2d 681, 899 P.2d 67] (*Carbajal*), in which we determined that a restitution order for property damage was proper because the loss was "reasonably related" to the defendant's crime of leaving the scene of the accident and because it served the goal of deterring future criminality. (*Id.* at p. 1123.) In applying the *Carbajal* principles, the Court of Appeal here observed: "Because the jury necessarily found, as an element of the crime of felony hit and run, that Anderson was involved in an accident that resulted in injury or death, the restitution order was reasonably related to the expenses related to Milligan's injuries and death. Further, the order serves the purpose of deterring future criminality."

Defendant petitioned for rehearing on the propriety of restitution to the hospital only, relying on *People v. Slattery* (2008) 167 Cal.App.4th 1091 [84 Cal.Rptr.3d 672] (*Slattery*), which was decided by the Third District Court of Appeal after defendant's appellate matter was submitted for decision. *Slattery* concerned a defendant sentenced to prison for assault and ordered to pay the deceased victim's hospital expenses under section 1202.4. The *Slattery* court determined that the hospital was not a direct victim for purposes of mandatory restitution required by that statute. Defendant argued the reasoning of the *Slattery* court was applicable to his circumstances. He asserted that section 1203.1 expressly provides that restitution orders imposed under its authority must comply with the requirements of section 1202.4.

The Court of Appeal denied defendant's petition for rehearing, with no change in the judgment, but modified its opinion to include a discussion of *Slattery*, *supra*, 167 Cal.App.4th 1091. Without addressing defendant's statutory argument, the Court of Appeal declined to apply *Slattery*.

## II. DISCUSSION

The propriety of restitution under section 1203.1 for defendant's conviction of leaving the scene is not in dispute here. The only question before us is whether an order of restitution payable directly to the hospital was unauthorized under that statute.

Defendant relies on a provision of section 1203.1 to assert that the requirements of section 1202.4, including its "victim" definitions, are incorporated into section 1203.1. He asserts that, accordingly, the hospital was not

an authorized victim for purposes of restitution. As we shall explain, defendant misinterprets the applicable provision of section 1203.1 and conflates two separate statutes relating to restitution. The application of section 1203.1 is not limited by the terms of the later-enacted section 1202.4.

■ At the outset, respondent contends that defendant has forfeited his claim by failing to assert it in the trial court. However, defendant, based on his interpretation of section 1203.1, argues that the trial court exceeded its statutory authority in ordering restitution to the hospital. As framed, his claim falls within the "narrow exception" for "a so-called unauthorized sentence or a sentence entered in excess of jurisdiction." (*In re Sheena K.* (2007) 40 Cal.4th 875, 886–887 [55 Cal.Rptr.3d 716, 153 P.3d 282].) "[T]he 'unauthorized sentence' concept constitutes a narrow exception to the general requirement that only those claims properly raised and preserved by the parties are reviewable on appeal. [Citations.]" (*People v. Scott* (1994) 9 Cal.4th 331, 354 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) "[A] sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case." (*Ibid.*) "An obvious legal error at sentencing that is 'correctable without referring to factual findings in the record or remanding for further findings' is not subject to forfeiture." (*In re Sheena K.*, at p. 887.) We therefore consider whether the trial court's order of restitution was unauthorized under section 1203.1, although we ultimately reject defendant's statutory interpretation.[6]

A. *Comparison of Sections 1203.1 and 1202.4*

■ Section 1203.1 was added to the Penal Code in 1935. (Stats. 1935, ch. 604, § 2, pp. 1708–1709.) The statute gives trial courts broad discretion to impose probation conditions to foster rehabilitation and to protect public safety. (*Carbajal, supra,* 10 Cal.4th at p. 1120.) The court may impose upon probationers "reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer . . . ." (§ 1203.1, subd. (j).)

---

[6] At oral argument, appellate counsel argued for the first time that restitution should be awarded to the victim's estate, and urged that the matter be remanded for a determination of the proper amount of restitution. Counsel argued that the hospital, in order to resolve the outstanding bill, may have been willing to accept less than the full amount owed. As the Attorney General responded, however, the appropriate amount of restitution was subject to challenge by defendant regardless of who the recipient was. Defendant did not object in the trial court to the amount of restitution ordered. His sole objection was that restitution for these expenses was improper because the victim's injuries resulted from a suicidal act. Defendant has waived a claim of error as to the amount of restitution by failing to object on that ground in the trial court. (See *In re Sheena K., supra,* 40 Cal.4th at p. 882.)

█ Restitution as a condition of probation has always been expressly authorized by section 1203.1. Originally, the statute called on trial courts to consider reparation or restitution as a condition of probation. (See Stats. 1935, ch. 604, § 2, p. 1708; *People v. Birkett* (1999) 21 Cal.4th 226, 234, fn. 8 [87 Cal.Rptr.2d 205, 980 P.2d 912].) The statute was amended in 1982 to require that restitution be imposed "in proper cases." (Stats. 1982, ch. 1413, § 6, pp. 5403–5404; now § 1203.1, subd. (a)(3).)

While restitution under section 1203.1 may serve to compensate the victim of a crime, it also addresses the broader probationary goal of rehabilitating the defendant. " 'Restitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused.' " (*Carbajal, supra,* 10 Cal.4th at p. 1124.) Restitution "impresses upon the offender the gravity of the harm he has inflicted upon another, and provides an opportunity to make amends." (*Charles S. v. Superior Court* (1982) 32 Cal.3d 741, 748 [187 Cal.Rptr. 144, 653 P.2d 648].)

█ We noted in *Carbajal, supra,* 10 Cal.4th 1114, that under section 1203.1, "California courts have long interpreted the trial courts' discretion to encompass the ordering of restitution as a condition of probation even when the loss was not necessarily caused by the criminal conduct underlying the conviction." (*Carbajal,* at p. 1121.) As we explained: "Under certain circumstances, restitution has been found proper where the loss was caused by related conduct not resulting in a conviction (*People v. Miller* [(1967)] 256 Cal.App.2d [348,] 355–356 [64 Cal.Rptr. 20]), by conduct underlying dismissed and uncharged counts (*People v. Goulart* (1990) 224 Cal.App.3d 71, 79 [273 Cal.Rptr. 477]), and by conduct resulting in an acquittal (*People v. Lent* [(1975)] 15 Cal.3d [481,] 483 [124 Cal.Rptr. 905, 541 P.2d 545]). There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action. (See *In re Brian S.* (1982) 130 Cal.App.3d 523, 528–532, 534, fn. 4 [181 Cal.Rptr. 778].)" (*Carbajal,* at p. 1121.) In *Carbajal,* we upheld a restitution order for property damage after concluding that "in the context of the hit-and-run statute, the restitution condition may relate to conduct that is not in itself necessarily criminal, i.e., the probationer's driving at the time of the accident." (*Id.* at p. 1123, fn. omitted.)

Section 1202.4 has a more recent history. The statute in its present form is the result of a lengthy and complex evolution that began with the 1982 adoption of Proposition 8, also known as the Victims' Bill of Rights. That measure added article I, section 28 to the California Constitution, which provided: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity

shall have the right to restitution from the persons convicted of the crimes for losses they suffer." (Cal. Const., art. I, § 28, former subd. (b).)[7]

Section 1202.4 provides: "It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." (§ 1202.4, subd. (a)(1).) Subject to exceptions not relevant here, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (*Id.*, subd. (f).)

The term "victim" is specifically defined in section 1202.4, subdivision (k) and encompasses "[a]ny corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity *when that entity is a direct victim of a crime.*" (§ 1202.4, subd. (k)(2), italics added.) "Thus, Penal Code section 1202.4, subdivision (k) permits restitution to a business or governmental entity only when it is a *direct victim* of crime." (*People v. Martinez* (2005) 36 Cal.4th 384, 393 [30 Cal.Rptr.3d 779, 115 P.3d 62].) When the Legislature added the direct victim language to section 1202.4 in 1994, "that term already carried a precise meaning." (*Martinez*, at p. 393, fn. omitted.) This definition was adopted in *People v. Birkett, supra*, 21 Cal.4th 226, "in which we described a provision in Penal Code former section 1203.04 permitting restitution to entities that are 'direct' victims of crime as limiting restitution to 'entities *against which* the probationer's crimes had been committed'—that is, entities that are the 'immediate objects of the probationer's offenses.' (*Birkett, supra*, at pp. 232–233.)" (*Martinez*, at p. 393.)

Nevertheless, as the mandatory direct victim restitution statutes were implemented, section 1203.1 continued to provide trial courts "broad general discretion to fashion and impose conditions of probation appropriate to individual cases." (*People v. Birkett, supra*, 21 Cal.4th at p. 235.) The predecessor statute to section 1202.4 expressly provided that "[n]othing in this section shall be construed to limit the authority of the court to grant or deny probation or provide conditions of probation." (Former § 1203.04, subd. (g), as amended by Stats. 1994, ch. 1106, § 4, pp. 6550, 6552.) In *People v. Birkett*, we recognized that courts interpreted their discretion under

---

[7] California Constitution, article I, section 28 was amended by initiative measure on November 4, 2008. Former subdivision (b) of that provision was renumbered subdivision (b)(13) and the text of the subdivision was amended.

section 1203.1 as encompassing the ordering of restitution conditions even under circumstances not strictly governed by Proposition 8 and the mandatory restitution statutes. (*Birkett*, at p. 235.)

■ Trial courts continue to retain authority to impose restitution as a condition of probation in circumstances not otherwise dictated by section 1202.4. In both sections 1203.1 and 1202.4, restitution serves the purposes of both criminal rehabilitation and victim compensation. But the statutory schemes treat those goals differently. When section 1202.4 imposes its mandatory requirements in favor of a victim's right to restitution, the statute is explicit and narrow. When section 1203.1 provides the court with discretion to achieve a defendant's reformation, its ambit is necessarily broader, allowing a sentencing court the flexibility to encourage a defendant's reformation as the circumstances of his or her case require.

### B. *Effect of Section 1203.1, Subdivision (a)(3)*

Despite the distinction between the statutes, defendant nevertheless argues that the requirements of section 1202.4 have been incorporated into section 1203.1.

Section 1203.1 provides that "[t]he court shall consider whether the defendant as a condition of probation shall make restitution to the victim or the Restitution Fund." (§ 1203.1, subd. (b).) Section 1203.1 does not define "victim." However, defendant refers to section 1203.1, subdivision (a)(3), which states: "The court shall provide for restitution in proper cases. The restitution order shall be fully enforceable as a civil judgment forthwith *and in accordance with Section 1202.4 of the Penal Code*." (Italics added.) Defendant reads the italicized phrase to mean that a restitution order imposed under section 1203.1 must comply with the requirements of mandatory restitution orders imposed under section 1202.4, including its definitions of "victim." This reading is overbroad.

■ We apply basic principles of statutory construction to ascertain the Legislature's intent in using the phrase "in accordance with Section 1202.4 of the Penal Code." "Because the language of a statute is generally the most reliable indicator of the Legislature's intent, we look first to the words of the statute, giving them their ordinary meaning and construing them in context. If the language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls. (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818 [31 Cal.Rptr.3d 591, 115 P.3d 1233]; *People v. Braxton* (2004) 34 Cal.4th 798, 810 [22 Cal.Rptr.3d 46, 101 P.3d 994].)" (*People v. Hudson* (2006) 38 Cal.4th 1002, 1009 [44 Cal.Rptr.3d 632, 136 P.3d 168].)

The grammatical structure of the sentence upon which defendant relies does not support his interpretation. The statutory language provides that "[t]he restitution order shall be fully enforceable as a civil judgment," with two modifiers: "forthwith" and "in accordance with Section 1202.4." "Forthwith" is defined as "immediately" (Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 493), and "accordance" is defined as "agreement, conformity" (*id.* at p. 8). In other words, the restitution order shall be fully enforceable, immediately and in conformance with section 1202.4.

In turn, section 1202.4 provides that a restitution order "shall be enforceable as if the order were a civil judgment." (*Id.,* subds. (a)(3)(B), (i).) Section 1202.4, subdivision (m) provides that, as to probationers, "[a]ny portion of a restitution order that remains unsatisfied after a defendant is no longer on probation shall continue to be enforceable by a victim pursuant to Section 1214 until the obligation is satisfied." The language of section 1203.1 relied on by defendant reflects no more than the Legislature's intent to assure consistency in the immediate enforceability of restitution orders.

The legislative history provides further, albeit unnecessary, confirmation. The sentence in section 1203.1, subdivision (a)(3) upon which defendant relies was added in 1998. (Stats. 1998, ch. 931, § 393.5, p. 6611.) Section 1202.4 was amended at the same time. (Stats. 1998, ch. 201, § 1, pp. 1012, 1014.) Section 1202.4 had provided that a restitution order was "enforceable as if the order were a civil judgment *pursuant to section 1214.*" (*Id.,* former subds. (a)(3)(B), (i).) The 1998 amendment deleted the italicized phrase.

In early 1998, Senate Bill No. 1608 (1997–1998 Reg. Sess.), which led to the amendments at issue, was introduced. A report of the Senate Committee on Public Safety stated the purpose of the bill was "to make it clear that restitution orders obtained by victims of crime and enforceable against a convicted offender may be enforced as a civil order immediately, without any delay during a period of probation (in lieu of incarceration) or parole (after release from prison)." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1608 (1997–1998 Reg. Sess.) as amended Apr. 21, 1998, p. 2 (Analysis).) The report noted that section 1214 had created some confusion in that regard. (Analysis, at p. 4.) Specifically, the bill was described as effecting the following changes to the statutes: "(1) Adds to Section 1203.1 that a restitution order is effective immediately upon issuance, thereby removing any delay during a period of probation. [¶] (2) Deletes from Section 1202.4 any reference to the enforcement of restitution orders 'pursuant to Section 1214' so that it is clear that restitution orders may be enforced without any delay during a period of probation or parole." (Analysis, at p. 4.) Nothing in the legislative documents supports the broader construction urged by defendant.

Because the definitions of "victim" in section 1202.4, subdivision (k) are not incorporated into section 1203.1, defendant's reliance on *Slattery, supra,* 167 Cal.App.4th at page 1091, is inapposite. Slattery was convicted of assaulting her dependent mother, who later died leaving unpaid hospital expenses. Defendant was sentenced to state prison and the court ordered her to pay restitution to the hospital under the authority of section 1202.4, subdivision (f). (*Slattery,* at pp. 1094–1095.)

The Court of Appeal in *Slattery* modified the judgment by striking the restitution order and otherwise affirmed the judgment. It determined that the hospital was not a "direct victim" of the defendant's crime, as defined in section 1202.4, subdivision (k)(2). "[T]he hospital incurred its economic loss indirectly from defendant's conduct: first, defendant illegally inflicted injuries upon her mother; second, Marshall Hospital treated defendant's mother for the injuries; third, defendant's mother did not pay the hospital bills." (*Slattery, supra,* 167 Cal.App.4th at p. 1097.)

The *Slattery* court stated: "Section 1202.4, subdivision (f) explicitly requires that the immediate victim, defendant's mother, be made whole for her economic losses, including medical expenses, resulting from defendant's criminal conduct. (§ 1202.4, subd. (f), (f)(3)(B).) Because defendant's mother is deceased, the court must order the restitution to be paid to her estate. Diverting the restitution due defendant's mother to a third party, such as Marshall Hospital, violates the statute because it fails to make defendant's mother whole. (*Birkett, supra,* 21 Cal.4th at pp. 245–247.) As the People concede, Marshall Hospital may bring a civil claim against the mother's estate to ensure payment of the debt." (*Slattery, supra,* 167 Cal.App.4th at p. 1097.)

As discussed above, section 1202.4's *mandatory* requirement for restitution to a legal or commercial entity is expressly limited to situations in which that entity was the direct victim of a defendant's criminal conduct. *Slattery's* holding on this point is correct, but it does not dispose of this case. Restitution here was not ordered pursuant to section 1202.4, but rather under the broader, discretionary authority of section 1203.1. We turn to the application of that statute.

## C. *Restitution Order Under Section 1203.1*

The trial court's discretion under section 1203.1, "although broad, nevertheless is not without limits: a condition of probation must serve a purpose specified in the statute." (*Carbajal, supra,* 10 Cal.4th at p. 1121; see *People v. Olguin* (2008) 45 Cal.4th 375, 379 [87 Cal.Rptr.3d 199, 198 P.3d 1].)

■ We determine whether the restitution order, as a condition of probation, is arbitrary or capricious or otherwise exceeds the bounds of reason under the circumstances. (*People v. Olguin, supra*, 45 Cal.4th at p. 384; *Carbajal, supra*, 10 Cal.4th at p. 1121.) "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' " (*People v. Lent, supra*, 15 Cal.3d at p. 486.) Probation is "an act of clemency and grace" (*People v. Rodriguez* (1990) 51 Cal.3d 437, 445 [272 Cal.Rptr. 613, 795 P.2d 783]), not a matter of right (*People v. Rubics* (2006) 136 Cal.App.4th 452, 459 [38 Cal.Rptr.3d 886]). "Because a defendant has no right to probation, the trial court can impose probation conditions that it could not otherwise impose, so long as the conditions are not invalid under the three *Lent* criteria." (*Id.* at p. 460.) If the defendant finds the conditions of probation more onerous than the sentence he would otherwise face, he may refuse probation. (*People v. Olguin, supra*, 45 Cal.4th at p. 379.)

As we have emphasized, the validity of restitution for Milligan's medical expenses is not before us. We determine only whether the court properly ordered payment of that restitution directly to the treating hospital.

Even under the general term "victim" contained in section 1203.1, it is not disputed that Milligan was the victim of the accident in which defendant failed to stop and render aid. Had Milligan lived, he would have been entitled to restitution for the debt he owed to the hospital. Because Milligan died, however, the court confronted the issue of how to structure the restitution order.

■ When a victim is deceased, the court may properly order restitution paid to the victim's estate under section 1203.1. ■ The Probate Code provides an orderly process for claims against the estate of a deceased victim. Nevertheless, while restitution to the estate was one available option, it was not the only one under the particular circumstances of this case. Under the court's broad discretion, an order of restitution payable directly to the hospital was not unreasonable.

Efforts made to save Milligan's life at Sharp Memorial Hospital resulted in medical expenses totaling $31,397.55. As the Court of Appeal pointed out, the hospital, a trauma center, was statutorily obligated to provide emergency treatment to Milligan regardless of his ability to pay. (See Health & Saf. Code, § 1317, subds. (a), (b) & (d).)[8] At the time of the restitution hearing, almost

---

[8] Health and Safety Code section 1317, subdivision (a) provides: "Emergency services and care shall be provided to any person requesting the services or care, or for whom services or

two years after the accident, those medical expenses remained unpaid. The victim's mother told the court that she was being harassed for payment. The prosecutor represented that the victim lacked assets to pay the hospital bill. The prosecutor also represented that the family was not liable for those expenses. Neither representation made by the prosecutor was challenged by defendant. Moreover, there is no evidence in this record that a probate estate was ever opened after Milligan's death, which would have allowed for the filing of creditor claims. The victim's mother voiced no objection to direct restitution to the hospital.

As we have emphasized, section 1203.1, subdivision (j) authorizes the imposition of reasonable conditions of probation: "The court may impose and require . . . [such] reasonable conditions . . . as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer . . . ." (§ 1203.1, subd. (j).) Under the particular circumstances of this case, the injury done to Milligan by defendant's breach was redressed by fashioning a restitution order in which payment for medical expenses was made directly to the hospital. This was not a circumstance in which a restitution award was being diverted from the victim to satisfy a requested third party claim. (See *Slattery*, *supra*, 167 Cal.App.4th at p. 1097.)[9]

As a result of the order, the family would not be further burdened by having to open or leave open probate of Milligan's estate to accommodate payment of the restitution award.[10] The court's order also assured that amends be made to society for the criminal violation because the hospital would be paid for the care it was required by law to provide. Thus, the order was "fitting and proper to the end that justice may be done." (§ 1203.1,

care is requested, for any condition in which the person is in danger of loss of life . . . ." The statute further provides that emergency care shall not be based upon, or affected by, the person's ability to pay for medical services. (*Id.*, subd. (b).)

Subdivision (d) provides: "Emergency services and care shall be rendered without first questioning the patient or any other person as to his or her ability to pay therefor. However, the patient or his or her legally responsible relative or guardian shall execute an agreement to pay therefor or otherwise supply insurance or credit information promptly after the services are rendered."

[9] Nothing in the record indicates the hospital made an independent claim for restitution. The probation report indicates the victim's mother provided the documentation for the hospital expenses.

[10] The court placed defendant on formal probation for five years so that, among other reasons, defendant would have sufficient time to pay restitution. The court noted "the substantial sums being ordered paid" and stated that "the longest period of probation supervision would thereby enhance or maximize [defendant's] opportunity to make victim restitution as ordered over the period of the probationary grant."

subd. (j).) Finally, restitution of the deceased victim's hospital expenses, paid directly to the hospital, renders defendant accountable for the financial harm he caused and contributes to his reformation and rehabilitation.

 We emphasize that our holding here is a narrow one. Based on the record in this case, the trial court's order of direct payment to the hospital was not arbitrary, capricious, or beyond the bounds of reason. Accordingly, the court did not abuse its discretion under section 1203.1.

## DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.