Filed 10/20/20  P. v. Lincoln CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JEVELYN LINCOLN,<br><br>Defendant and Appellant. | H047212<br>(Santa Clara County<br>Super. Ct. No. C1900110) |

Appellant Jevelyn Lincoln pleaded no contest to check forgery.  The trial court suspended imposition of sentence, placed Lincoln on probation, and imposed a number of probation conditions on her, including that she pay victim restitution.  She appeals the restitution order, contending the trial court erred in ordering her to pay $99 for credit protection services for the husband of the individual whose bank account appeared on the forged check.  For the reasons explained below, we affirm the restitution order.

## I.  FACTS AND PROCEDURAL BACKGROUND

A. *Procedural History*

The underlying facts of Lincoln's crime do not appear in the record on appeal.  Both parties assert, based on statements made by the attorneys at Lincoln's sentencing hearing, that Lincoln attempted to cash a $1,400 forged check written on a bank account belonging to Mina M.  Lincoln was charged by complaint with forgery of a check whose

value exceeded $950 (Pen. Code, § 470, subd. (d);[1] count 1).  She pleaded no contest to the charge and waived her right to jury trial in a plea agreement that provided she would be placed on probation and ordered to serve 120 days in the county jail as a condition of probation.  In her written plea agreement, she initialed the box next to the term in the plea agreement that stated "I understand the Court will order me to pay full restitution to any victim(s) for his/her/their losses."

The probation report prepared for Lincoln's sentencing does not reference a specific victim restitution request.  At the sentencing hearing, the probation officer requested that the court order $396 in victim restitution to be paid to victim Mina M.[2]  At some point prior to sentencing, the probation department apparently prepared a supplemental document with a specific request for restitution from the victim, but that document does not appear in the record on appeal.  According to Lincoln's counsel's statements at the sentencing hearing, Mina M. had requested $396 for identity protection services from " 'cleanupmycredit.com,' " consisting of $285 for Mina M. and $99 for John M., Mina M.'s husband.[3]

Lincoln argued at the sentencing hearing there was no showing that Lincoln herself had tried to steal the victim's identity and no indication there was any damage to the victim's credit, "much less her husband's credit."  Lincoln particularly objected to the inclusion of credit protection for Mina M.'s husband, since the bank account on which the check was written belonged only to Mina M.  The prosecutor responded that these

---

[1] Unspecified statutory references are to the Penal Code.

[2] To protect the victim's privacy, we here refer to her by her first name and the first initial of her last name.  (Cal. Rules of Court, rule 8.90(b)(4).)  We refer to her husband using the same naming convention.

[3] We observe that adding the two amounts listed by Lincoln's trial counsel does not result in the figure of $396 requested by probation and ultimately ordered by the trial court.  Because the written restitution request does not appear in the record on appeal, we cannot explain the discrepancy.  In any event, Lincoln does not raise this issue, and failure by the appellant to provide an adequate record requires that we resolve the issue against her.  (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)

2

loses are "routinely" "reimbursed" in "these [types of] cases." With respect to Mina M. and John M., the prosecutor stated, "They believe either the information was obtained from their mailbox or stolen from a car. They don't know. They're just doing their best. They didn't ask for this to happen, but their information was taken and the defendant used it to cash a $1400 check."

The trial court ordered the full amount of restitution requested. The court stated "These types of cases, people get these policies to protect them from their—events of this because a bank may report this as a bad check, bad credit, whatever, and so that's what I'm going to impose. It is not out of line of the anticipated damage. And so the way I understand credit reportings to go, it's the—frankly, it's going to show that they had a problem with a bank, and that could reverberate down to the future." With respect to the specific objection to the credit monitoring for Mina M.'s husband, the trial court stated "It's a community. They're married. They're in a familial community, and the debt of one can be the debt of another." The trial court further found that "imposing this type of restitution may also provide some deterrent effect in the future. So I'm going to impose that. Irrespective of whether it was stolen out of their mailbox or out of a car or something else, the—California recognizes a right of privacy in Article I Section I of the state constitution, and people ought to respect that right of privacy in others. So I'm going to make a note that—and I think restitution of this type might help in her rehabilitation as well, as I mentioned, by the deterrent effect."

At sentencing, the trial court placed Lincoln on formal probation for a period of three years and ordered her to serve 120 days in the county jail as a condition of probation. Among other conditions of probation, the trial court ordered her to pay $396 in restitution to Mina M. Lincoln timely appealed the judgment.

Lincoln argues the trial court abused its discretion in ordering her to pay to Mina M. the $99 in restitution for the credit reporting service for John M., Mina M.'s husband.

Lincoln contends the restitution amount does not meet the *Lent*[4] standard that governs probation conditions because John M. did not suffer a loss and was not the victim of any crime committed by Lincoln. Lincoln does not object to the $285 for credit reporting services for Mina M. and requests that we strike $99 from the restitution order imposed by the trial court.

The Attorney General counters that substantial evidence supports the trial court's restitution order, and Lincoln failed to present evidence rebutting the claimed losses. Citing to Family Code section 910, subdivision (a),[5] the Attorney General contends that the $99 restitution award was proper because the trial court's finding that the couple were in a familial community with shared liabilities was supported by substantial evidence. Lincoln responds that her appeal does not dispute the amount of the cost of credit protection services for John M. but instead contends that he suffered no economic loss and therefore was not a victim who is entitled to restitution. Lincoln argues that, because any harm to the community would occur through Mina M., any such harm would be covered by Mina M.'s own credit protection plan, rendering unnecessary the credit reporting services for John M.

## II. DISCUSSION

A. *General Principles of Victim Restitution*

The California Constitution provides that crime victims have a right to receive "restitution from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art I, § 28, subd. (b)(13)(A).) Penal Code section 1202.4 implements this

---

[4] *People v. Lent* (1975) 15 Cal.3d 483.

[5] This statute provides "Except as otherwise expressly provided by statute, the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt." (Fam. Code, § 910, subd. (a).)

constitutional mandate and requires full victim restitution in criminal cases. (Pen. Code, § 1202.4, subd. (f).)

Subdivision (f) of section 1202.4 provides in relevant part that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court," and that the restitution order "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." Subdivision (k) of section 1202.4 defines " 'victim' " in relevant part as "(3) A person who has sustained economic loss as the result of a crime and who satisfies any of the following conditions: [¶] (A) At the time of the crime was the parent, grandparent, sibling, spouse, child, or grandchild of the victim." (Pen. Code, § 1202.4, subd. (k)(3)(A).)

Trial courts also have the authority to order victim restitution for defendants placed on probation pursuant to their broad authority to fashion probation conditions under section 1203.1, subdivision (j).[6] (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120–1121 (*Carbajal*).) The California Supreme Court has described the trial court's power to order victim restitution in probation cases as "broader than its power to order direct victim restitution under section 1202.4 in cases in which the defendant receives a nonprobationary sentence." (*People v. Martinez* (2017) 2 Cal.5th 1093, 1101 [comparing "direct victim" restitution under section 1202.4 and the trial court's power to order

---

[6] Section 1203.1, subdivision (j), provides in relevant part that "[t]he court may impose and require any or all of the above-mentioned terms of imprisonment, fine, and conditions, and other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer."

restitution as a condition of probation]; see also *People v. Anderson* (2010) 50 Cal.4th 19, 29 ["Trial courts continue to retain authority to impose restitution as a condition of probation in circumstances not otherwise dictated by section 1202.4."].)

Under either type of restitution, we review a restitution order for abuse of discretion. (See *Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 305; *Carbajal*, *supra*, 10 Cal.4th at pp.1120–1121.) " ' " 'Where there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " ' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).) " 'In reviewing the sufficiency of the evidence [to support a factual finding], "the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' " (*Ibid.*)

" 'Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] "If the circumstances reasonably justify the [trial court's] findings," the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact.' " (*Millard*, *supra*, 175 Cal.App.4th at p. 26.) " '[T]he court's discretion in setting the amount of restitution is broad, and it may use any rational method of fixing the amount of restitution as long as it is reasonably calculated to make the victim whole.' " (*Ibid.*) When setting restitution as a condition of probation, "under *Lent* the restitution condition must be reasonably related either to the crime of which the defendant is convicted or to the goal of deterring future criminality." (*Carbajal*, *supra*, 10 Cal.4th at p. 1123.)

We decide the trial court did not abuse its discretion when it determined that the restitution order for John M. was reasonably related both to Lincoln's crime of conviction and to deterrence of any future such crime by her. Lincoln herself does not challenge the

trial court's restitution order for credit monitoring services for Mina M., and we agree that they are reasonably related to the crime of check forgery. Lincoln also does not dispute that Mina M. and John M. are married, and the trial court correctly observed that they are presumptively responsible for each other's debts. (Fam. Code, § 910, subd. (a).) That the trial court might have determined that it was not required to order restitution for the cost of credit monitoring for John M. under section 1202.4 does not render unreasonable the court's determination that such an order was within its authority under section 1203.1, subdivision (j) and rationally related both to Lincoln's crime and deterrence of any future criminality by her. Consequently, the trial court did not abuse its discretion when it included the challenged $99 in its restitution order. (See *Carbajal*, *supra*, 10 Cal.4th at p. 1123.)

### III. DISPOSITION

The restitution order is affirmed.

_____
                              Danner, J.

WE CONCUR:



_____
Greenwood, P.J.




_____
Grover, J.




**H047212**
*People v. Lincoln*