Filed 1/4/22  P. v. Ortiz CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GIOVANNY ORTIZ,<br><br>    Defendant and Appellant. | H046647<br>(Santa Clara County<br>Super. Ct. No. C1768074) |

Defendant Giovanny Ortiz was granted probation following his plea of guilty to accessory after the fact to the fatal shooting of Alexis Cardenas.  (Pen. Code, § 32.)  As a condition of probation, the trial court ordered Ortiz, jointly and severally with his codefendant, Eric Carter, to pay restitution for the cost of Cardenas's funeral.  We conclude that the trial court did not abuse its discretion in finding that restitution serves a rehabilitative purpose.  We therefore affirm the order.

### I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Jaerome Calamba arranged to meet with Carter for the ostensible purpose of buying a gun Ortiz had recently purchased.  Calamba and Carter agreed to a price, and as confirmation of his ability to pay, Calamba texted Carter a photo of $4,000 cash.

---

[1] Because Ortiz pleaded guilty prior to trial, we derive the facts from the preliminary hearing transcript.

Unbeknownst to Carter and Ortiz, however, Calamba planned to rob Carter of the gun, with Alexis Cardenas as his get-away driver.

By agreement, the night of July 5, 2017, Cardenas drove Calamba to a street corner where Calamba had previously purchased drugs from Carter. Carter was standing near his car, where Ortiz was waiting in the driver's seat. When Calamba got in the car, Ortiz retrieved an unloaded .40 caliber Sig Sauer pistol from under his seat and handed the gun to Calamba for inspection. Upon confirming that the gun was not fake, Calamba asked Ortiz for the magazine, but Ortiz replied by asking for the money. Calamba pepper-sprayed Ortiz and then—on seeing Carter reach for the front of his waistband as though for a gun—Carter as well.

Chased by Ortiz, Calamba ran to where Cardenas was waiting with his car. Carter fired multiple shots even though Ortiz was close behind Calamba. Calamba got into the car and told Cardenas to drive off. Ortiz hung onto the passenger door as Cardenas drove away. Carter continued firing and shot Cardenas through the back of his head as the car rounded a corner. Ortiz let go of the car on seeing Cardenas had been shot. Cardenas crashed into a truck.

Carter and Ortiz fled, leaving the county for Modesto, California, where Ortiz's cousin lives. Two days after the shooting, Carter and Ortiz were arrested at a motel in Modesto. Found in their motel room was a bus ticket from Modesto to Amarillo, Texas, under a different name.

Although Ortiz was initially charged, like Carter, with Cardenas's murder, the trial court granted his motion to dismiss that charge under Penal Code section 995. On April 25, 2018, Ortiz entered a guilty plea to Count 3 of the second amended information, accessory to a felony, in violation of Penal Code section 32. On October 22, 2018, the

2

court suspended imposition of sentence and granted Ortiz probation for a term of three years.[2]

On January 28, 2019, the trial court ordered Ortiz to pay restitution in the amounts of $7,500 to the Victims Compensation Board and $12,869.74 to Cardenas's mother for funeral expenses.[3] The trial court ordered that Ortiz and Carter be jointly and severally liable for the restitution.[4]

Ortiz timely appealed.

## II.    DISCUSSION

Penal Code section 1203.1 "gives trial courts broad discretion to impose probation conditions to foster rehabilitation and to protect public safety." (*People v. Anderson* (2010) 50 Cal.4th 19, 26.)  The statute expressly provides for restitution.  (Pen. Code, § 1203.1, subd. (a)(3).)  A trial court abuses its discretion in imposing a condition of probation if it " '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .' " (*People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*).)

Ortiz argues that paying funeral expenses satisfies none of the *Lent* criteria, given the nature of his conviction.  But restitution "has been found proper where the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal [citation]." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 (*Carbajal*).)  "[T]he

---

[2] The probation order included fees which the parties do not dispute are subject to mandatory vacatur under subsequently enacted Penal Code section 1465.9 and Government Code section 6111.  (Assem. Bill. No. 1869 (2019-2020 Reg. Sess.) §§ 62 & 11.).

[3] Ortiz stipulated to the $7,500 amount.

[4] The parties agree that the provision for restitution liability to be joint and several was erroneously omitted from the Order for Victim Restitution, filed January 28, 2019.

question simply is whether the order is reasonably related to the crime of which the defendant was convicted or to future criminality." (*In re I.M.* (2005) 125 Cal.App.4th 1195, 1209 (*I.M.*).)

In *I.M.*, as in the instant case, the juvenile court found true the allegation that I.M. was an accessory after the fact to a murder and ordered I.M. as a condition of probation to pay $15,184.43 in restitution for the victim's funeral. (*I.M.*, *supra*, 125 Cal.App.4th at p. 1199.) The court found the fact that "a defendant was not personally or immediately responsible for the victim's loss does not render an order of restitution improper." (*Id*. at p. 1209.)

Ortiz contends *I.M.* is distinguishable because it involved gang conduct, unlike the homicide here. We read neither *I.M.* nor *Carbajal* so narrowly. The focus in both cases was on promotion of rehabilitation, not on determination of vicarious or collective criminal liability for another's acts. A court may order restitution for a probationer to " 'make amends "to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer." ' " (*I.M.*, *supra*, 125 Cal.App.4th at p. 1210, quoting *Carbajal*, *supra*, 10 Cal.4th at p. 1126.) As in *Carbajal*, the restitution ordered by the trial court in this case can be construed as serving a "rehabilitative purpose by directing [Ortiz] to accept the social responsibility he attempted to evade when he fled the scene . . . ." (*Carbajal*, *supra*, 10 Cal.4th at p. 1125.)

Although the trial court determined that Ortiz had no criminal liability for Cardenas's death, the record entitled it to infer that Ortiz was an active participant in a high-risk gun sale, and that he was not unaware of the risks even as he sat with Calamba in Carter's car. The trial court could reasonably find that in chasing after Calamba after having been pepper-sprayed, Ortiz was escalating the likelihood of someone being injured, including himself. The testimony that Ortiz continued to give chase even after

4

Carter began shooting—in Ortiz's and Calamba's common direction—lent further support for such an inference.

Nor does the record reflect any action by Ortiz to halt or even withdraw from the hostilities that erupted before it was too late, such as attempting to stop Carter from shooting or to render aid to Cardenas; instead, he fled with Carter to Modesto, where Ortiz had family. Even after his arrest, Ortiz was recorded whispering to Carter that maybe Ortiz could evade liability if he told the officer he had been seeing a psychiatrist. As in *I.M.*, the trial court was within its discretion to conclude that payment for Cardenas's funeral expenses would impress upon Ortiz the "emotional and financial effects" of his conduct's consequences for Cardenas's family. (See *I.M.*, *supra*, 125 Cal.App.4th at p. 1210.)

We conclude that the trial court acted within its broad discretion by ordering restitution in the form of funeral expenses.

### III.   DISPOSITION

Pursuant to Penal Code section 1465.9 and Government Code section 6111, the probation order shall be modified to reflect that the presentence investigation fee, criminal justice administration fee, and probation supervision fee imposed on Ortiz by the trial court are vacated with regard to any fees remaining unpaid as of July 1, 2021. The January 28, 2019 order for victim restitution in the amount of $12,869.74 and the corresponding abstract of judgment shall be modified to reflect joint and several liability with Carter. As modified, the probation order and restitution judgment are affirmed.

5

_____
LIE, J.

WE CONCUR:


_____
GROVER, ACTING P.J.



_____
DANNER, J.




*People v. Ortiz*
**H046647**