Filed 6/25/24  P. v. Spaulding CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C098200 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE015920) |
| v. | |
| SUSAN SPAULDING, | |
| Defendant and Appellant. | |

As the caretaker for her elderly father, defendant Susan Spaulding was responsible for her father's finances.  For several months, Spaulding gambled and spent her father's money on personal items instead of using it for his rent, food, and care.  Spaulding's father passed away during the pendency of this case.  She pled no contest to embezzlement from an elder and the trial court granted probation.  As a condition of probation, the court ordered restitution of $21,010 in unpaid rent to Pacifica SD Management Company (Pacifica), the property management company of the victim's residence.  On appeal, Spaulding claims the trial court abused its discretion when it

1

ordered her to pay restitution directly to Pacifica instead of the estate of the victim. Spaulding further contends the court breached a material term of the plea agreement by awarding restitution to Pacifica. Finding these contentions lack merit, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Spaulding is the daughter and former caretaker of the victim. As her father's caretaker, she controlled her father's finances, which consisted of approximately $3,000 in monthly income. Each month she was supposed to use the money to buy her father food, clothes, and to "t[ake] care of him." During a welfare check at her father's residence, Spaulding admitted to a detective that she wasn't "doing the right thing" with her father's money because she was spending approximately $2,500 each month on "non-dad" things, such as paying herself, purchasing herself clothes, and gambling at a casino. She also admitted "they" were not paying monthly rent, which was approximately $2,000.

Two employees of Pacifica, the property management company for the father's residence, confirmed to the detective that the victim owed past due rent and late fees. Pacifica's records indicated Spaulding had not paid rent on the victim's behalf for several months. Pacifica initially called the tenant to inquire about payment and then posted late rent notices on the door of the residence. Pacifica maintained records of the late rent notices sent to the victim. Due to COVID-19, a statewide moratorium on evictions prevented Pacifica from starting eviction proceedings against the victim for failure to pay rent.[1]

---

[1] We take judicial notice of the COVID-19 Tenant Relief Act of 2020 as enacted by Assembly Bill No. 3088 (2019-2020 Reg. Sess.) (Stats. 2020, ch. 37, § 3) and Senate Bill No. 91 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 2, § 1). (Evid. Code, § 452, subd. (a).)

An information charged Spaulding with one count of embezzlement from an elder, to which she pled no contest. (Pen. Code, § 368, subd. (d).)[2] The victim passed away over 13 months prior to Spaulding entering into the plea agreement. The plea agreement contained the following terms: (1) Spaulding would plead no contest to the charged count, as a misdemeanor; in exchange she would, (2) serve a 180-day sentence on a work project, (3) serve three years of informal probation, and (4) pay restitution.

The prosecutor estimated restitution would be "in the neighborhood of $16,000 to $20,000." The trial court discussed each term of the plea agreement with Spaulding, and she acknowledged she understood the terms. When discussing restitution, the court said, "[T]here is going to be a restitution order. . . . I can't tell what the amount is, but there will be a restitution order made in this case." Spaulding responded that she understood. When imposing the restitution term of the plea, the court said the amount would be determined later. Spaulding again acknowledged she understood and accepted the terms of probation. The order for informal probation indicated the restitution amount would be "TBD," and listed the victim as defendant's father.

A month later the trial court held a contested restitution hearing. Spaulding argued restitution should be paid to her father's estate. The prosecutor claimed restitution should be paid directly to Pacifica, relying on section 1203.1 and *People v. Anderson* (2010) 50 Cal.4th 19 (*Anderson*). Pacifica drafted a ledger that the prosecution submitted into evidence substantiating the claimed restitution amount of $21,010.

Defense counsel contended it was inappropriate to award restitution to Pacifica because it was not a named or direct victim, Pacifica had not taken any steps to evict the victim, and Pacifica could make a civil or probate claim against the victim's estate for restitution. The trial court confirmed with the parties that there was no active probate of

---

[2]    Undesignated statutory references are to the Penal Code.

the victim's estate, the estate only consisted of personal property, the victim did not have a will or trust, and Spaulding and her brother were the only heirs. The prosecutor argued Pacifica took steps to provide notice to the victim of past due rent, which constituted an attempt to compel the victim to pay rent because the eviction moratorium prevented Pacifica from pursuing an eviction action.

The trial court awarded restitution to Pacifica based on the "[c]ourt's broad discretion" and the reasoning in *Anderson*. (*Anderson, supra*, 50 Cal.4th at pp. 28-29.) The court found the victim was deceased, he lived in his residence without paying rent for a period of time as a result of Spaulding's criminal conduct, there was not an open probate matter, and probate was not likely because the victim's estate only consisted of personal property. The court reasoned that if it awarded restitution to the victim's estate then Spaulding or her brother would have to open a probate, serve as the executor, and would have to then collect money and pay it to Pacifica. The court found "unless [it] exercised broad discretion it has as annunciated in" *Anderson*, Pacifica did not have a "good remedy" to collect the funds embezzled by Spaulding. (*Id*. at pp. 26-27.)

Spaulding filed a timely appeal.

## DISCUSSION

On appeal Spaulding claims the trial court abused its discretion in awarding restitution to Pacifica because Pacifica was not a direct victim under section 1202.4, and the court exceeded its authority to order restitution under section 1203.1, as limited by *Anderson*. Spaulding also contends that awarding restitution to Pacifica violated a material term of the plea agreement. We conclude none of Spaulding's claims have merit.

I. *Restitution ordered pursuant to section 1203.1 is not required to be paid to a "direct victim."*

Spaulding argues the trial court erred in ordering restitution to Pacifica because it was not a "direct victim" as defined in section 1202.4, subdivision (k)(2). Her argument

4

fails because the trial court imposed restitution as a condition of probation pursuant to section 1203.1, not section 1202.4. Section 1203.1 does not define "victim," and the "direct victim" requirement of section 1202.4 is not incorporated into section 1203.1. (*Anderson, supra*, 50 Cal.4th at pp. 29-31.)

A trial court must order "direct victim restitution in 'every case in which a victim has suffered economic loss as a result of the defendant's conduct.' (§ 1202.4, subd. (f); see also § 1202.4, subd. (a)(1).)" (*People v. Maheshwari* (2003) 107 Cal.App.4th 1406, 1409.) The word " 'victim' " is specifically defined as a "direct victim of a crime." (§ 1202.4, subd. (k)(2).) But when restitution is imposed as a condition of probation, it is governed by section 1203.1. (*Anderson, supra*, 50 Cal.4th at pp. 26, 28-29.) "A trial court's power to order restitution in probation cases is thus broader than its power to order direct victim restitution under section 1202.4 in cases in which the defendant receives a nonprobationary sentence." (*People v. Martinez* (2017) 2 Cal.5th 1093, 1101.)

Because the trial court ordered restitution as a condition of probation, section 1202.4's requirement that only a direct victim of a crime can receive restitution does not apply. (*Anderson, supra*, 50 Cal.4th at p. 31.) Accordingly, when the court ordered restitution under section 1203.1 it necessarily had " 'broad general discretion to fashion and impose conditions of probation appropriate to [this] individual case[ ].' " (*Anderson*, at p. 28, quoting *People v. Birkett* (1999) 21 Cal.4th 226, 325.) Next, we turn to the trial court's application of section 1203.1.

II.    *The trial court did not abuse its discretion by ordering restitution to be paid directly to Pacifica.*

Spaulding further contends the trial court abused its discretion by ordering restitution payable directly to Pacifica, claiming it exceeded its statutory authority under section 1203.1 because the order fell outside the scope of *Anderson*. The People argue *Anderson* is analogous and the restitution order fell within the court's broad discretion. We agree with the People.

5

In *Anderson*, the trial court placed the defendant on probation and ordered restitution be paid directly to a hospital for medical expenses incurred by the deceased victim because of the defendant's criminal conduct. (*Anderson, supra*, 50 Cal.4th at p. 32.) Our Supreme Court held the restitution order, imposed under the broad discretion section 1203.1 provides, was reasonable because restitution was not ordered until two years after the victim died, medical expenses had remained unpaid, the victim's estate lacked assets, and the victim's family did not open a probate estate. (*Anderson*, at pp. 32-33.) We conclude *Anderson* is factually analogous and the trial court's restitution order fell within the ambit of *Anderson*.

"We determine whether the restitution order, as a condition of probation, is arbitrary or capricious or otherwise exceeds the bounds of reason under the circumstances." (*Anderson, supra*, 50 Cal.4th at p. 32.) " 'A condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. . . ." ' " (*Ibid*., quoting *People v. Lent* (1975) 15 Cal.3d 481, 486.)

" 'Because a defendant has no right to probation, the trial court can impose probation conditions that it could not otherwise impose, so long as the conditions are not invalid under the three *Lent* criteria.' " (*Anderson, supra*, 50 Cal.4th at p. 32.) Trial courts have broad discretion to order restitution as a condition of probation "even when the loss was not necessarily caused by the criminal conduct underlying the conviction." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.)

"The trial court's discretion under section 1203.1, 'although broad, nevertheless is not without limits: a condition of probation must serve a purpose specified in the statute.' " (*Anderson, supra*, 50 Cal.4th at p. 31, quoting *People v. Carbajal, supra*, 10 Cal.4th at p. 1121.) Those purposes include making amends, fostering rehabilitation, and protecting public safety. (§ 1203.1, subd. (j); *Carbajal*, at pp. 1120-1121.)

6

Reasonable probation conditions include ordering a defendant to pay restitution. (*Anderson*, at p. 32.) Although the trial court had authority under section 1203.1 to order restitution be paid to the victim's estate, it was not the only available option under the particular facts of this case. (*Anderson*, at p. 32.)

Spaulding's criminal conduct caused an injury to Pacifica because it did not receive rent payments from Spaulding, on behalf of the victim, while the victim lived in his residence for approximately 10 months. The death of the victim, before Spaulding entered into her plea agreement, resulted in the trial court fashioning the restitution order to ensure justice could be done with respect to the unpaid rent amounts due to Pacifica. (§ 1203.1, subd. (j).)

Having found there was no probate opened, the victim died intestate, the estate only consisted of personal property, and Spaulding and her brother were the sole heirs and potential executors, the trial court reasonably concluded a probate likely would not be opened. The court also found that if restitution was made payable to the victim's estate, rather than directly to Pacific, it could essentially leave restitution unpaid because the estate had no assets, and it would require Spaulding or her brother to open a probate for the sole purpose of paying restitution. Payment of restitution directly to Pacifica meets the purpose of section 1203.1 "that justice may be done." (§ 1203.1, subd. (j).)

Paying Pacifica directly relieved Spaulding and her brother from the burden of opening a probate for the sole purpose of paying restitution. (*Anderson, supra*, 50 Cal.4th at p. 33.) Paying restitution directly to Pacifica also avoided a scenario where Spaulding could pay restitution to herself as the executor of the victim's estate, effectively leaving Pacifica without a remedy to recover the lost rent amounts. The trial court's order assured that the restitution award made amends for the financial injury of lost rent suffered by Pacifica because of Spaulding's criminal conduct. (§ 1203.1, subd. (j).) Direct payment of restitution to Pacifica also satisfied the reformation and

rehabilitation purposes of section 1203.1 by holding Spaulding accountable for failing to pay rent as her father's caregiver. (*Ibid.*)

We conclude the trial court did not abuse its discretion under section 1203.1.

III.    *The restitution recipient was not a material term of the plea agreement.*

Spaulding contends that because the written order of probation phrased the restitution order as restitution in an amount to be determined to "Victim(s): R[.]L[.]," the court materially altered the terms of the agreement by ordering restitution be paid to Pacifica. What Spaulding omits is that the trial court's oral pronouncement of the restitution order did not name a particular person or entity. Rather, when accepting Spaulding's plea, the trial court orally advised Spaulding that there would be a restitution order, but did not identify a particular recipient. This is significant to the extent that where there is a discrepancy between the oral pronouncement of judgment and the minute order, the oral pronouncement controls. (See *People v Zackery* (2007) 147 Cal.App.4th 380, 385.) There was nothing the trial court said or did at the time of the plea that indicated that restitution would only be paid to Spaulding's father. Here, *who* would receive restitution was not a term of the plea agreement, let alone a material term. Plea agreements are a form of contract, and we interpret plea agreements according to general contract principles. (Civ. Code, § 1635 et seq.; *People v. Segura* (2008) 44 Cal.4th 921, 930.) A material term is a "contractual provision dealing with a significant issue." (Black's Law Dict. (11th ed. 2019) p. 1772, col. 2.) The only material term of the plea agreement related to restitution contemplated Spaulding would pay restitution in an amount that would be determined at a later hearing. That term of the plea agreement was clear and unambiguous.

DISPOSITION

The judgment is affirmed.

_____/s/_____
EARL, P. J.

We concur:

_____/s/_____
DUARTE, J.

_____/s/_____
KRAUSE, J.