Filed 7/8/21  P. v. Avalos CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075994 |
| v. | (Super.Ct.No. RIF1704003) |
| JORGE ARMANDO AVALOS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Johnnetta E. Anderson, Judge.  Reversed with directions.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

## FACTUAL AND PROCEDURAL HISTORY

### A.    PROCEDURAL HISTORY

On March 18, 2019, a second amended information charged defendant and appellant Jorge Armando Avalos with having unlawful sexual intercourse with an intoxicated victim, Jane Doe, under Penal Code[1] section 261, subdivision (a)(3) (count 1); penetration by a foreign object of an intoxicated person under section 289, subdivision (e) (count 2); oral copulation of an intoxicated person under section 287, subdivision (i) (count 3); and committing an act of sexual penetration by means of force or violence under section 289, subdivision (a)(1)(A) (count 4).  The jury found defendant guilty on counts 1 through 3, and not guilty on count 4.

On May 20, 2019, at the sentencing hearing, the trial court sentenced defendant to 14 years in state prison as follows:  the middle term of six years on count 1; a consecutive middle term of six years on count 2; and one-third the middle term or two years on count 3, to run consecutive to the terms in counts 1 and 2.  The court then ordered victim restitution to be paid in an amount determined by the probation department under section 1202.4, subdivision (f), and reserved jurisdiction to set the amount of the victim restitution.  The court also ordered that any dispute as to the amount owed to the victim would be resolved in a court hearing.  Defendant filed a notice of appeal.[2]

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

[2]  On February 1, 2021, we granted defendant's request for judicial notice of our unpublished opinion in case No. E072862.

2

While the first appeal was pending before this court, the trial court held an ex parte proceeding on August 7, 2020. At the hearing, the court ordered that defendant pay a $8,685 restitution fine to the Victims Compensation Board (VCB), and directed victim restitution to be determined by probation. The court then ordered any disputes to be resolved in a court hearing. On October 13, 2020, defendant filed a timely notice of appeal of the court's restitution order.

Thereafter, on December 2, 2020, we affirmed defendant's conviction in case No. E072862.

B.    FACTUAL HISTORY[3]

"Luz Loza was married to defendant's father, Jorge Avalos, Sr. (Jorge Sr.). Loza had two daughters, Tanya and Naomy Godoy. In August 2017, Tanya[4] was dating Isaias Avalos, defendant's brother and Jorge Sr.'s son, and they had a child together. Jane Doe was Loza's niece. On August 26, 2017, Loza, Jorge Sr., Isaias, Tanya, Naomy and Doe spent the day at Lake Perris. Defendant met them at the lake. Loza did not see any interaction between Doe and defendant at the lake.

"On August 27, 2017, Loza, Jorge Sr., defendant, defendant's girlfriend Evelyn, Isaias, Tanya (and her daughter), Naomy, Doe (and her son), and Doe's sister Darlene all went to an El Torito restaurant for brunch. Most of the adults were drinking all-you-can-drink Mimosas. They were at the restaurant for several hours.

---

[3] The factual history is taken from our prior opinion.

[4] We refer to some of the witnesses by their first names or initials for clarity due to shared last names. No disrespect is intended.

3

"Doe and defendant were sitting across from each other at the table. Defendant appeared to be interested in Doe even though he was sitting next to Evelyn. Loza observed that as the day progressed, Doe appeared drunk. Defendant got into an argument with Evelyn and she left as they were all leaving the restaurant.

"When they decided to leave the restaurant, defendant invited them back to his apartment because his apartment complex had a pool. As they were leaving, Tanya observed that Doe had trouble walking and appeared to be drunk. Loza had to help Doe to the car. Doe had not expressed to Tanya that she had an interest in defendant.

"Jorge Sr. drove Doe to defendant's apartment along with Naomy, Darlene, and Doe's son. The rest of the family drove in two other vehicles. On the way to defendant's apartment, Jorge Sr. had to stop three times because Doe had to vomit. She vomited again in the parking lot at defendant's apartment complex. Naomy indicated that Doe appeared a 'little bit' drunk. Loza observed that Doe was drunk. Loza and Tanya walked Doe to the couch in defendant's apartment.

"Doe vomited into the kitchen sink and defendant was present standing behind her. Naomy observed while Doe and defendant were at the sink, defendant moved his hand down Doe's buttocks and pinched her buttocks. Loza saw defendant holding Doe at her waist. Loza took Doe to the couch. Doe had a hard time walking and was slurring her words. Doe was unable to sit upright on the couch.

4

"Defendant allowed Doe to lay down in his bedroom. Loza and Tanya laid Doe down on the bed. Doe went to sleep. Naomy noted that Doe appeared to be drunk. Defendant encouraged everyone to go to the pool.

"Everyone went to the pool except for Isaias and Tanya, who stayed in defendant's apartment to watch over Doe. Defendant also stayed in the apartment. Defendant told Tanya and Isaias that he wanted to 'get at' Doe. Tanya told him Doe had a boyfriend.

"Defendant left the apartment telling Isaias, Naomy and Tanya he was going to get pizza for the children. They observed him walk down the stairs to the parking lot. Tanya wanted to check on her daughter at the pool so she and Isaias left the apartment and went to the pool. It was a two-minute walk to the pool.

"Naomy decided to return to defendant's apartment to stay with Doe. Darlene came with Naomy and sat on the couch. Naomy thought Doe was alone in the apartment and defendant was out getting food. The door to the bedroom was open when Naomy returned from the pool. Naomy looked into the bedroom to check on Doe, and defendant was in the room with his shorts down. He pulled up his shorts when he saw Naomy. Doe was on the bed and her legs were hanging over the edge. Doe appeared to be unconscious. Defendant said, 'Oops.' Doe did not see defendant having sexual intercourse with Doe.

"Naomy went back to the pool. She whispered in Tanya's ear that she had found defendant in the apartment with his pants down. Tanya told Loza. Tanya, Loza, Naomy and Jorge Sr. ran back to the apartment. Doe was on the bed with her feet hanging off the bed. She did not want them to touch her. Doe appeared to be still drunk and was upset.

5

Doe got into a fetal position on the bed and was agitated. Doe said that she was sorry that Naomy 'had to see that.' She also said that she told him 'no,' and that she could not get him off of her. She told them she did not want it to happen. Naomy and Tanya had seen defendant on the stairs leading to the apartment and he said, 'I didn't do anything.'

"Doe did not want anyone to touch her and kept pushing them away. Tanya, Loza and Naomy were finally able to get her up but she stumbled and still appeared to be intoxicated. Doe was crying and shaking. Doe stumbled when they finally got her off the bed and still appeared to be intoxicated. Loza had to help Doe walk. Doe got into Jorge Sr.'s car with Loza and Doe's son. Loza saw defendant at the apartment and he appeared nervous. Doe did not initially want them to call the police.

"Loza and Jorge Sr. took Doe to her apartment in Anaheim. Doe's mother called the police and they went to the hospital for a sexual assault exam. Tanya and Loza went with Doe to the hospital. She was scared and shaking. Naomy also went to the hospital. Doe seemed very sad." (*People v. Avalos*, 2020 Cal.App.Unpub. LEXIS 7961, *2-6, 2020 WL 7054233.)

**DISCUSSION**

Defendant's sole contention on appeal is that he "is entitled to a hearing under Penal Code section 1202.4 before contested restitution amounts may be ordered." Defendant goes on to state that "the court's restitution order of August 7, 2020 consisted of amounts appellant objected to at sentencing, requiring that a hearing be held before these same amounts may lawfully be made part of a restitution order." The People contend that defendant forfeited his opportunity to contest the restitution order.

6

However, if we disagree that defendant forfeited his challenge, the People contend "the matter should be remanded for the limited purpose of a restitution hearing." For the reasons set forth *post*, we will remand the matter for the trial court to hold a restitution hearing.

A.    ADDITIONAL FACTS

On May 2, 2019, at defendant's sentencing hearing, the trial court (specifically, Judge Hollenhorst) imposed, but stayed, a minimum restitution fine under section 1202.4, subdivision (b).

When the trial court asked defense counsel if he wanted to be heard on any application fines and fees, defense counsel stated:

"I request that the Court assess no fine in this case. I request that the Court find no ability to pay any fees in this case, including the probation department, the booking fee, the preincarceration costs. I'd request that the Court set the restitution fine and the parole revocation fine at the minimum of $300 each, and that the Court find no ability to pay those as well. [¶] . . . [¶] I understand that there's also actual restitution that is going to be requested. So I'm, at this time, requesting that the Court find no ability to pay." In response, the court sated, "The Court will find no ability to pay based on [defendant's] prison sentence and the fact that he is an indigent defendant represented by a government attorney. [¶] The Court will impose minimum fines and fees applicable, but will stay the imposition of those fines. [¶] As to actual restitution, the Court will reserve jurisdiction on that matter for any restitution to be determined at a future date."

Thereafter, as to the actual amount of restitution, the People requested that the court order defendant to reimburse the VCB in addition to actual restitution of Doe. The prosecutor stated he was in possession of a "Cal VCB" restitution request for reimbursement of $8,199 for amounts paid by the VCB fund as a result of the incident involved in the case. The restitution amounts were for Doe, her sister and her mother. When asked why they were seeking restitution for the sister and mother, the prosecutor informed the court "that both her sister and her mother received counseling after this incident because of trauma that they experienced as a result of it."

At this hearing, defense counsel stated: "I have seen it [the restitution request], and I'm objecting to it, your Honor for two things. Number one, there's two parties listed on there that are not involved in this case whatsoever. They're not victims. They're not witnesses. [¶] There was a payment made on behalf of (Jane Doe M.R.) that I'm not objecting to except for there's been no documentation provided of what that was for. So I would like further documentation about it. I did look. I have my phone out for this reason. It says that the amount of assistance provided by the restitution fund shall be established by copies of bills submitted to the [VCB] reflecting the amount paid by the board and whether the services for which payment was made were for medical or dental, funeral or burial, mental health counseling, or wage, or support losses, or rehabilitation. . . . But we don't have any of that here."

After further discussion, the court stated: "Court will order actual restitution to be paid to the named victim, (Jane Doe M.R.), both through the government agency that you're referring to as well as actual restitution in this matter. [¶] The Court will—

8

[prosecutor], I think the Court is sort of in line with you in the sense that I don't know of any authority where an adult victim, her family, or relatives can receive restitution through the government compensation fund. I am aware of the provision of minors and family. So the Court will exercise its discretion and not order at this time restitution of family members for the government compensation fund. However, the restitution amount under the government compensation fund for the victim will be ordered. I hope that's clear." The court then went on to state that if defendant "has an objection to any of the actual restitution, he may have a hearing on that matter at a later date."

Nine months later, on February 14, 2020, the trial court received a restitution discrepancy letter from the Department of Corrections and Rehabilitation (DCR). The letter advised that a fine under section 1204.45 had been imposed without a restitution fine being ordered under section 1202.4, subdivision (b).

In an ex parte proceeding on February 14, 2020, the same trial court that conducted the sentencing hearing on May 2, 2019, ordered defendant to pay a restitution fine in the amount of $300 under section 1202.4, subdivision (b). In an amended abstract of judgment filed February 21, 2020, defendant was ordered to pay a restitution fine in the amount of $300 under section 1202.4, subdivision (b), and a restitution fine in the same amount under section 1202.45, suspended unless defendant's parole is revoked. The amended abstract of judgment also reflected that the court reserved jurisdiction to set victim restitution, and that any dispute as to the amount be resolved by a court hearing.

On May 27, 2020, it appears that the probation department prepared a memorandum from the Victim Restitution Division of the Probation Department was filed with the court. In the memorandum, the probation department stated that the amount of restitution had been determined based upon a review of the police report, as well as loss documentation and the VCB. The probation department recommended that the court order defendant to pay a total of $8,685 in restitution. On July 24, 2020, the court (specifically Judge Anderson) signed an order at the end of the memorandum, stating "It is ordered." The memorandum also indicated that if defendant disagreed with the amount stated in the order, he had 30 days from the notice to set the cause for calendar. Defendant never set a hearing. Although the order was signed on July 24, 2020, the court held an ex parte hearing on August 7, 2020. At the hearing, Judge Anderson ordered defendant to pay restitution in the amount of $8,685 payable to the VCB, plus an additional amount incurred to the extent the victim received further assistance from VCB. The probation department memorandum was also filed in the trial court on August 7, 2020. However, a stamp says the memorandum with the order was received in the "legal processing unit" at the "Dept. of Corrections and Rehabilitation" on August 14, 2020. There is nothing in the record to indicate that the probation department memorandum was sent to or received by defendant prior to August 14, 2020.

On October 13, 2020, defendant filed an appeal from the restitution order filed on August 7, 2020.

B.     LEGAL BACKGROUND

The California Constitution provides that crime victims have a right to restitution when they suffer losses as a result of criminal activity.  (Cal. Const., art I, § 28, subd. (b)(13)(A) & (B); see *People v. Giordano* (2007) 42 Cal.4th 644, 652 (*Giordano*) [discussing former Cal. Const., art I, § 28, subd. (b)].)  This constitutional mandate is implemented by section 1202.4, which provides in pertinent part:  "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court."  (§ 1202.4, subd. (f); see *id.*, subd. (a)(1); *Giordano*, at p. 656.)  A "victim" for purposes of restitution includes not only the actual victim of the offense, but also "shall include all of the following:  [¶]  (1) The immediate surviving family of the actual victim"; and "[a] person who has sustained economic loss as the result of a crime and who satisfies any of the following conditions:  [¶]  (A) At the time of the crime was the parent, grandparent, sibling, spouse, child, or grandchild of the victim."  (§ 1202.4, subd. (k)(1), (3)(A).)

"The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution."  (§ 1202.4, subd. (f)(1).)  "At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss.  [Citations.]  'Once the victim has [i.e., the People have] made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the

11

amount of the loss is other than that claimed by the victim.' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26; see *Giordano*, *supra*, 42 Cal.4th at p. 664.)

"To the extent possible, the restitution order . . . shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." (§ 1202.4, subd. (f)(3).) Economic losses may include the value of damaged property and lost wages (*id.*, subd. (f)(3)(A), (D) & (E)), as well as "[i]nterest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court" (*id.*, subd. (f)(3)(G)).

"A restitution order is intended to compensate the victim for its actual loss and is not intended to provide the victim with a windfall. [Citations.] While the court need not order restitution in the precise amount of loss, it 'must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' " (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172-1173.)

A trial court's restitution order is ordinarily reviewed for abuse of discretion. (*Giordano*, *supra*, 42 Cal.4th at p. 663.) The abuse of discretion standard " 'asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts [citations].' [Citation.] Under this standard, while a trial court has broad discretion to choose a method for calculating the amount of restitution, it must employ a method that is rationally designed to determine the surviving victim's economic loss." (*Id.* at pp. 663-664.) However, " '[t]here is no requirement the

12

restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action.' " (*People v. Millard*, *supra*, 175 Cal.App.4th at pp. 26-27.) "To facilitate appellate review of the trial court's restitution order, the trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make a clear statement of the calculation method used and how that method justifies the amount ordered." (*Giordano*, at p. 664.)

### C. ANALYSIS

We first address section 1237.2, which provides: "*An appeal may not be taken by the defendant from a judgment of conviction on the ground of an error in the imposition* or calculation *of fines, penalty assessments, surcharges, fees, or costs unless the defendant first presents the claim in the trial court* at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction in the trial court, which may be made informally in writing. The trial court retains jurisdiction after a notice of appeal has been filed to correct any error in the imposition or calculation of fines, penalty assessments, surcharges, fees, or costs upon the defendant's request for correction. *This section only applies in cases where the erroneous imposition* or calculation *of fines, penalty assessments, surcharges, fees, or costs are the sole issue on appeal*." (Italics added.) As our colleagues in the Second District have noted, "section 1237.2 broadly applies to an error in the *imposition* or calculation of fees. The plain language of the statute 'does not limit [its] reach only to situations where the fee simply did not apply at all or was a result of mathematical error.'

13

[Citation.] Section 1237.2 applies any time a defendant claims the trial court wrongly imposed fines, penalty assessments, surcharges, fees, or costs without having first presented the claim in the trial court." (*People v. Hall* (2019) 39 Cal.App.5th 502, 504.)

Here, section 1237.2 does not apply because this is not an appeal from a judgment of conviction. As provided, *ante*, defendant filed an appeal from his conviction and on December 2, 2020, we affirmed defendant's conviction in an unpublished opinion. (See *People v. Avalos* (Dec. 2, 2020, E072862) [nonpub. opn.].)

Next, we turn to the People's argument that defendant "forfeited his opportunity to contest the restitution order." For the reasons set forth below, we disagree with the People and find that defendant objected to the restitution order.

A defendant who fails to object to a restitution order "forfeit[s] any claim that the order was merely unwarranted by the evidence, as distinct from being unauthorized by statute." (*People v. Brasure* (2008) 42 Cal.4th 1037, 1074; see also *People v. Anderson* (2010) 50 Cal.4th 19, 26, fn. 6 ["Defendant . . . waived a claim of error as to the amount of restitution by failing to object on that ground in the trial court"]; and *People v. McCullough* (2013) 56 Cal.4th 589, 597 [defendant's failure to object below forfeited his claim that the evidence was insufficient to support imposition of jail booking fee].)

In this case, as noted in detail *ante*, at the sentencing hearing defense counsel clearly objected to an award of restitution as to Doe's mother and sister. Counsel was not objecting to awarding restitution to Doe, but objected on the basis that Doe's restitution request was not based upon sufficient documentary support. Although the trial court, Judge Hollenhorst, declined to order restitution for Doe's mother and sister, he ordered

14

restitution on behalf of Doe. The trial court never held a hearing on restitution to address defense counsel's objections. However, at an ex parte hearing months later, a different judge, Judge Anderson, ordered defendant to pay restitution to both Doe's mother and sister—based on the same amounts that defense counsel had objected to at the original sentencing hearing. Since the hearing was held ex parte, defense counsel did not have an opportunity to renew his objections made at the sentencing hearing.

Notwithstanding, the People argue that defendant has forfeited this claim on appeal because "if appellant disagreed with the court's order for restitution, he should have brought the matter to the court's (or his attorney's) attention within the required thirty-day period." However, as discussed *ante*, the evidence is unclear when and if defendant or his counsel received the probation department memorandum and order. The "order" in the memorandum stated defendant should set a hearing within 30 days after the order was signed on July 24, 2020, if defendant objected to the order. There is nothing to indicate that the order was sent to defendant or his counsel on July 24, 2020. As noted *ante*, there is a stamp on the memorandum that it was received by the Department of Corrections and Rehabilitation on August 14, 2020. However, there is nothing in the record to indicate that defendant or his counsel actually received the order. Moreover, even if defendant received the order, by the time defendant received it, he may have believed his 30-day period from July 24, 2020, the date the "order" was executed, had already expired. Furthermore, although the trial court held an ex parte hearing on August 7, 2020, the minute order failed to indicate that there was a 30-day period wherein defendant could object to the restitution order. Therefore, we agree with defendant that

15

he has not forfeited his challenge to the restitution order since his counsel clearly expressed his objections at the sentencing hearing.

The People argue that if we find defendant did not forfeit his argument, "the matter should be remanded for a limited restitution hearing." According to the People, the restitution hearing should be limited to the restitution order "assigned to Doe," and not the restitution ordered on behalf of Doe's sister and mother. In support of this argument, the People contend that at the sentencing hearing, defense counsel only objected that restitution should not be ordered for Doe's relatives because they "were 'not involved in this case,' that is, they were not 'victims' for purposes of restitution." However, Doe's mother and sister qualify for restitution under section 1202.4, subdivision (k)(3)(A). The People argue that because defense counsel did not explicitly object to the restitution amounts proposed for Doe's mother and sister, any remand should be limited to the restitution amounts due to Doe only." We disagree.

Although defense counsel's objection regarding Doe's mother and sister was based on the fact neither of them were qualified to receive compensation, there was no opportunity for further argument for defense counsel to challenge the orders on other grounds. After the court and attorneys discussed this matter, the trial court declined to order restitution for Doe's relatives so no further objections at this time were necessary. The record does show that defense counsel objected to the restitution recommended for Doe based on the fact that it was not supported by sufficient documentation. Therefore, under these circumstances, we remand the matter for a restitution hearing on all three claims—by Doe, her mother and her sister.

**DISPOSITION**

The order is reversed and the matter is remanded to the trial court for a restitution hearing.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.

We concur:

RAMIREZ _____
P. J.

FIELDS _____
J.

17