Filed 6/27/23  P. v. Roberts CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>ZACHARY JAY ROBERTS,<br><br>    Defendant and Appellant. | A165569<br><br>(Napa County<br>Super. Ct. No. 21CR001131) |

After a jury convicted Zachary Jay Roberts of two counts of felony cruelty to animals, the trial court placed him on probation for two years, subject to various terms and conditions.  Roberts's sole argument on appeal is that the trial court abused its discretion in imposing a probation condition that requires him to pay $4,575 in restitution to the Napa County Animal Shelter for impounding and boarding "Raiderette," a dog taken from his possession when he violated a condition of pretrial release that prohibited him from keeping any animals.  Roberts contends that the restitution order is not related to his crimes or reasonably related to deterring future criminal conduct. Roberts has not shown error, and we will affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *Proceedings Before Trial*

On May 24, 2021, the Napa County District Attorney filed a complaint alleging that Roberts committed felony cruelty to animals in violation of

1

Penal Code section 597, subdivision (b).[1]  The complaint alleged two counts, each associated with a different dog:  Avery (count 1) and Princess (count 2). In a later-filed information, the district attorney added a count as to a third dog, Raiderette (count 3), and alleged aggravating factors as to all three counts for great bodily harm, particularly vulnerable victims, and a prior criminal history showing a pattern of committing crimes of increasing seriousness.

At the arraignment on the complaint on June 11, 2021, the court ordered Roberts released on his own recognizance under the condition that he not own or possess any dogs, pets, or animals.  Princess was dead and Avery had been taken from Roberts' possession, but the court was aware that Roberts had a third dog, Raiderette.  The court told Roberts that if he still possessed Raiderette, he would need to relinquish her to the shelter or find her a new home.  Roberts stated he understood, and he agreed to the conditions of his release.

On December 9, 2021, the probation department submitted a petition to revoke Roberts's conditional release.  According to the petition, Roberts was accompanied by a dog he claimed to own when he was contacted by Napa Police the day before in a suspicious vehicle.  Roberts was arrested when a records check showed that he was on felony own-recognizance release with terms including his not owning or possessing any animal.  The dog, Raiderette, was impounded by animal control and taken to the Napa County Animal Shelter (shelter).  On December 10, 2021, the trial court revoked Roberts's conditional release and set bail at $10,000 on conditions including the same conditions that had been ordered in the prior own-recognizance release.

---

[1] All statutory references are to the Penal Code.

At the conclusion of the preliminary hearing on December 16, 2021, the prosecutor stated that Raiderette remained at the shelter. The prosecutor asked whether Roberts was interested in relinquishing ownership of Raiderette. She stated that the shelter would request restitution for each day the dog was there, and that if Roberts relinquished custody, he would not be responsible for restitution from that time forward and "the shelter will work and do whatever they can for Raiderette." The prosecutor also stated that if Roberts was convicted or pleaded to one of the counts, there would be a ban on animal possession. Roberts said he did not want to relinquish ownership at that time, and the court suggested he discuss the matter with his attorney.

B.    *Trial*

Roberts's case was tried to a jury in May and June 2022.

1.    *Prosecution Witnesses*

Angela Hopkins testified that she had dated Roberts for about 19 months. She lived with him in Napa until they broke up in December 2020, and she moved out of town. She and Roberts had four dogs: Spike, an older male chihuahua; Princess, who Hopkins thought was a terrier-chihuahua mix; and Avery and Raiderette, who were pit bulls. Hopkins testified that she did all the work to care for the dogs: she fed them, gave them water, took them out to relieve themselves, and cleaned their cages. She testified that when Roberts had been drinking, she would see him punch and kick Raiderette, and pull her by the tail. And if Princess was barking, he would throw her in her cage or throw her across the room. Hopkins testified she wanted to take the dogs with her when she left Roberts, but he would not let her. By the time she left, Roberts's mother had taken Spike. Princess, Avery, and Raiderette had not been spayed.

Deassa Binstock, a registered veterinary technician, testified that she worked with homeless people in Napa County who owned pets, to make sure that the animals received food and medical care. She first met Roberts near "Napa Humane," where she worked at the time, while she was on a lunch break in December 2020. She noticed that he had four dogs, who she later learned were Raiderette, Princess, and Avery, as well as an older male chihuahua, and she stopped to ask if Roberts needed anything. She testified that he needed dog food and she talked to him about spay and neuter. She offered to have Raiderette, Princess, and Avery spayed for free if he was interested. On December 22, 2020, she picked up the dogs from Roberts, took them to Napa Humane to be spayed, and brought them back to Roberts later that day after the surgeries were completed.

Binstock testified that after the spay surgeries, Roberts called her multiple times. At some point after the surgeries, but before January 16, 2021, Binstock visited Roberts and saw Raiderette, who looked fine, but she did not recall seeing the other dogs. On January 16, 2021, Roberts informed her that Princess was dead. Binstock offered to pick up the body because she did not know what Roberts would do with it, and because she wanted to see the other dogs. When she met with him the next day, he gave her Princess's body, which was skinny and covered in urine and feces, in a dog crate that contained "days worth of feces and urine." Binstock saw Avery that day and noticed that she was very thin and needed help. Roberts agreed to let Binstock take Avery for medical care, and Binstock took her directly to Silverado Veterinary Hospital.

Dr. Renee Michell, a veterinarian at Silverado Veterinary Hospital, testified that she responded to an emergency call to treat Avery on January 17, 2021. She testified that Avery was "severely emaciated," "severely

4

dehydrated," and smelled of urine and feces. She believed that Avery would have died within 24 to 48 hours if she had not been brought in for treatment. Michell evaluated and treated Avery at the hospital over the course of about a week. Avery's bloodwork was consistent with a dog who had not received proper nutrition and hydration, and Michell concluded that nothing was wrong with Avery's health except that she had been starved. Avery's condition improved after treatment; and she was cleared for release into foster care.

Dr. Mai Yee Mok, a veterinary anatomic pathologist, testified that she performed a necropsy on Princess. On the basis of the necropsy, she opined that Princess died from long-term undernutrition. She testified that there was no disease in the dog's body or problems with the dog's teeth or obstructions in the dog's mouth or esophagus that would have prevented Princess from eating if she had access to food.

Dr. Amanda Vance, who had been a veterinarian for almost 22 years and whose work almost exclusively involved spaying and neutering dogs, cats, and rabbits, testified that she performed the surgeries to spay Raiderette, Avery, and Princess. All three dogs had normal surgeries, and Vance saw no sign of abuse or neglect as to any of the three. Vance testified she had never seen or heard of a dog that would not eat to the point of emaciation after a spay surgery.

2.      *Defense Witnesses*

Despina Saulmon testified that she had known Roberts for about four or five years, and that about two years earlier she gave him two boxer-pit bull puppies named Avery and Raiderette. She testified that she had seen him with other dogs a few times, and gave him the puppies because she thought he would take care of them.

5

Roberts' mother testified that she observed Roberts with Princess, Avery, and Raiderette "pretty much every day." She saw him feed them and play with them; she never saw him hit them and never felt that he was abusing them. She testified that all three dogs looked healthy to her until they were spayed. Princess was less active after she was spayed, and she was bleeding in her belly area, and would barely eat, so Roberts used a syringe to feed her. Avery would not eat or drink after she was spayed, and Roberts fed her with a syringe that contained water and moist dog food.

Dale Vough testified that he had known Roberts for about a year, and had seem him walking Raiderette, who appeared healthy.

Roberts confirmed that he owned Princess, Avery, and Raiderette, and testified that he believed they were healthy before they were spayed. Princess was not eating normally after she was spayed, so he tried to feed her small portions with a syringe, but that did not work. He noticed she was bleeding from her vaginal area. On about Christmas Day, he called Binstock and told her about his concerns. She said she would check on the dog a few days later, but she did not come. Roberts testified that Avery was not eating, and that he tried to feed her with a syringe also, but that did not work. He called Binstock several times and told her there was something wrong with the dogs and he needed her help, but got no response. He did not bring the dogs to a vet because he lacked funds. After he called to tell Binstock that Princess died, she came the next day and took Princess and Avery. He signed paperwork to surrender Avery so she could get the vet care that he could not afford.

Roberts testified that he never kicked any of his dogs, never threw Princess, and never pulled Raiderette's tail. He testified that he suffered from seizures that affected his memory. After his girlfriend left him, he

6

drank heavily, and he admitted that his drinking may have interfered with his memory of events.

3.      *Verdicts*

In verdicts returned on June 2, 2022, the jury found Roberts guilty on the counts relating to Avery and Princess, and also found true the great bodily harm and vulnerable victim allegations associated with those counts. The jury acquitted Roberts on the count relating to Raiderette. The trial court subsequently found true the allegation of increasing seriousness of prior convictions.

After the jurors were excused, the prosecutor asked that Roberts voluntarily relinquish Raiderette, who had been at the shelter since December 2021, so she could "be rehomed or go through rescue or the adoption process." In the alternative, the prosecutor asked the court to order Raiderette be relinquished. The prosecutor stated that the shelter was entitled to restitution for Raiderette's care, so any delay would result in additional costs. Roberts relinquished Raiderette to the custody of the shelter on June 3, 2022.

C.      *Sentencing*

At the sentencing hearing on June 30, 2022, the prosecutor informed the court that the shelter was requesting $4,575 in restitution for Raiderette. The request was based on a letter from the shelter seeking an impound fee of $175 and $4,400 in board for 176 days at $25 per day. The prosecutor acknowledged that there was no conviction on the cruelty charge regarding Raiderette, and stated that Raiderette was not taken to the shelter because of

7

a charge pertaining to her, but instead was impounded when the police found Roberts with the dog in violation of the condition of his pretrial release.[2]

Roberts's counsel objected that "victim restitution" was inappropriate in light of the fact that Roberts was acquitted of the charge as to Raiderette. In response to the court's question whether Roberts was responsible for the costs, Robert's counsel responded, "He probably is civilly, absolutely. Like a small claims type of thing. But I don't see how, criminally, he's responsible for Raiderette, because he was acquitted of that."

The court placed Roberts on two years' formal probation, subject to terms and conditions including that he serve 270 days in jail and that he not own, possess, or have the care or control of any animal during the term of his probation. The court also ordered Roberts to pay restitution of $4,575 to the shelter as a condition of his probation.

Roberts timely appealed.

## DISCUSSION

### A. *Applicable Law and Standard of Review*

Trial courts have broad discretion under section 1203.1 to impose probation conditions to foster rehabilitation and protect public safety. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120-1121 (*Carbajal*).) Such conditions may include an order requiring the payment of restitution. (*Id.* at p. 1121; see § 1203.1, subd. (a)(3) ["The court shall provide for restitution in proper cases"].) Under section 1203.1, the trial court has "flexibility to encourage a defendant's reformation as the circumstances of his or her case require." (*People v. Anderson* (2010) 50 Cal.4th 19, 29.) Restitution under section 1203.1 is not limited to a "direct victim" of a crime. (*Id.* at pp. 28-29.) And

---

[2] Roberts was not charged with animal cruelty as to Raiderette until after the dog was impounded on December 8, 2021.

8

restitution may be ordered even when the loss being compensated is not caused by the criminal conduct underlying a defendant's conviction: depending on the circumstances, restitution may be imposed where loss is caused by conduct that does not result in a conviction, including uncharged conduct, conduct underlying dismissed charges, and conduct that results in an acquittal. (*Carbajal*, *supra*, 10 Cal.4th at p. 1121.)

The trial court's discretion to order restitution, like its discretion to order any other condition of probation, is broad but not unlimited. Upon review, "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.' " (*People v. Lent* (1975) 15 Cal.3d 481, 486.) "Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*Ibid.*) "The test for determining the validity of a restitution order as a condition of probation is the same as for any other condition of probation that requires or forbids conduct that is not itself criminal. The condition must be reasonably related either to the crime of which the defendant is convicted *or* to the goal of deterring future criminality." (*People v. Snow* (2012) 205 Cal.App.4th 932, 940, citing *Carbajal*, *supra*, 10 Cal.4th at pp. 1121, 1123.)

B.   *Analysis*

Roberts asserts that because he was acquitted of animal cruelty toward Raiderette, the restitution condition has no relation to the crimes for which he was convicted. We disagree. The costs incurred by the shelter in boarding Raiderette were related to the felony animal cruelty charges of which Roberts

9

was convicted because those charges were the basis of the own-recognizance release condition that prohibited his possession of any animal. Roberts agreed to the pre-trial release condition, and his violation of it resulted in the impoundment of Raiderette, and therefore in Roberts's responsibility for the cost to impound and board her when he would not relinquish her. The release condition, imposed because Roberts had been charged with animal cruelty, applied to the possession of any animal, regardless of whether Roberts had been charged with cruelty toward that particular animal. Roberts violated the condition, and the violation led to the restitution order. It does not matter whether Roberts was acquitted of animal cruelty as to Raiderette specifically; the fact remains that the restitution order is related to the crimes of which Roberts was convicted.

Even if the restitution order were not related to the crime for which Roberts was convicted, we would uphold the order because Roberts fails to show that it is not reasonably related to deterring future criminal conduct. (See *People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 831 [defendant who is challenging a condition of probation has the burden to show the trial court abused its discretion].) Roberts argues that requiring him to pay restitution is contrary to the probationary goal of deterring future criminality, including a future act of animal cruelty, because it encourages criminal conduct rather than deterring it. He contends that the restitution order encourages him to hide, abandon, or euthanize a dog he cannot care for, rather than surrender it. The argument is meritless. Raiderette was impounded and restitution was ordered because Roberts did *not* surrender the animal to the shelter or another caregiver. If he had done so, he would

not have been financially responsible for her care at the shelter.[3]  In his reply brief, Roberts asserts that the restitution order "financially penalizes compliance with a court order."  Not at all.  Restitution was ordered because Roberts did *not* comply with the court order that granted him own-recognizance release on the condition that he not possess an animal, even though the court informed Roberts that he had to relinquish Raiderette or find a new home for her.  If Roberts had complied with the court's order by surrendering Raiderette to the shelter or otherwise arrange for her to be cared for, there would have been no restitution to be paid here.

## DISPOSITION

We find no abuse of discretion in the trial court's requiring restitution to the shelter as a condition of Roberts's probation.  The judgment is affirmed.

---

[3] Roberts does not identify anything in the record to suggest that he would have had to pay the shelter for Raiderette's care if he had relinquished the animal to the shelter when he was released before trial on the condition that he not own or possess any animal.

_____

Miller, J.

WE CONCUR:

_____

Stewart, P.J.

_____

Markman, J.*

A165589, *People v. Roberts*

---

* Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12